ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* DIXIE COTTON OIL COMPANY.

AND

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* STATE, *ex rel.*

Opinion delivered March 16, 1914.

1. RAILROADS—DUTY TO SHIPPERS—EQUAL FACILITIES.—It is the duty of a railroad company to render equal and just treatment and facilities to all of its shippers who are similarly situated.   (Page 154.)

2. RAILROADS—DUTY TO SHIPPERS—EQUAL SERVICE—DISCRIMINATION.— A railway company will not be held to have discriminated in favor of one shipper and against another, when, by reason of the location of the tracks of another railway company, it is able to furnish switching facilities free to the first shipper, but because of different conditions makes a charge for switching to the other shipper. (Page 158.)

3. RAILROADS—SWITCHING SERVICE—ORDER OF RAILROAD COMMISSION— VALIDITY—DISCRIMINATION.—An order of the Railroad Commission requiring a railroad company to render switching service, under the same conditions and at the same rates, to two competing manufacturing companies, whose plants are not similarly situated with respect to said railroad companies' tracks, is void and in excess of the commission's powers.   (Page 158.)

4. RAILROAD COMMISSION—VALIDITY OF ORDER—HOW ATTACKED.—The authority of the Railroad Commission and the justness and reasonableness of its orders, are subject to inquiry in a collateral proceeding.   (Page 159.)

Appeals from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

### STATEMENT BY THE COURT.

As shown by the joint abstract filed by the appellants in this cause, two suits were brought against the appellants, the first by the State through its then prosecuting attorney, Roy D. Campbell, seeking to recover a judgment for $3,000 as a penalty for an alleged violation of Order No. 825 of the Arkansas Railroad Commission, and the violation of Act No. 422 of the General Assembly of the State of Arkansas approved May 28, 1907. The second suit was brought by the State through its then prosecuting attorney Robert L. Rodgers, for an alleged violation of said order and of said act, seeking to recover judgment for $60,000. These two suits were consolidated by the court, and by agreement were submitted along with the suit of the *Dixie Cotton Oil Co.* v. *St. Louis, I. M. & S. Ry. Co.,* where judgments were rendered against each appellant for $10,000.

This order of the Railroad Commission, No. 825, was made on September 20, 1909, and commanded the appellant railroad companies, from and after October 15, 1909, to desist and refrain from rendering switching services to or for the Buckeye Cotton Oil Company on more favorable terms than were accorded the Dixie Cotton Oil Company. These oil companies were competitors in the cotton oil business and both received and shipped large quantities of freight. It was alleged in the above suits that notwithstanding the order of the Railroad Commission, and the above mentioned act of the General Assembly of this State, that appellant railroads had wilfully and intentionally discriminated against the said Dixie Cotton Oil Company by charging the Dixie Company with switching charges, when no such charges were made against the Buckeye Company. In the first case, judgment was prayed in the sum of $3,000. The complaint filed by Rogers, as prosecuting attorney, recited substantially the same facts set up in the first complaint, but prayed judgment for $60,000. The appellee Dixie Cotton

Oil Company sued the appellant St. Louis, Iron Mountain & Southern Railway Company for the alleged discrimination against it, and set up substantially the same facts as are recited in the two State cases, and prayed judgment for $169,000.

Demurrers were filed to the various complaints upon the ground that they stated no cause of action, and did not show any violation of the provisions of Act No. 422 of the General Assembly approved May 28, 1907, which act it was alleged appellants had violated; and for the further reason that the Railroad Commission had no authority to make Order No. 825, and for the further reason that said order was unconstitutional, as violative of section 10 of article 1 and of section 1 of the Fourteenth Amendment to the Constitution of the United States; and for the further reason that the sections of Kirby's Digest which are said to confer the authority to sue for the penalties herein sued for is in contravention of section 9 of article 2, and of section 21 of article 2 of the Constitution of this State.

These causes were heard upon the same evidence (with some additional evidence), which was taken in the hearing of a petition of the Dixie Cotton Oil Company filed before the Interstate Commerce Commission, seeking a reparation of the switching charges alleged to have been unlawfully charged upon interstate shipments, and the facts of this case are so clearly and succinctly stated in the opinion in that case that we copy the statement of facts contained in that opinion as follows:

"Complainant is a corporation engaged in the manufacture of cotton seed products at Argenta, Ark. By petition filed May 20, 1911, it alleges undue discrimination, in that on interstate traffic defendants collect a charge of $3 per car for switching cars of freight between its plant and the junction of the St. Louis, Iron Mountain & Southern Railway (hereinafter called the Iron Mountain) with the St. Louis Southwestern Railway (hereinafter called the Cotton Belt), while no charge is made for a similar service to and from the plant of the Buck-

eye Cotton Oil Company, which is also located at Argenta. Reparation is asked.

"Argenta is on the north bank of the Arkansas River, opposite Little Rock, Arkansas. Complainant's plant is on a spur track of the Cotton Belt about a mile east of its junction with the Iron Mountain. The Chicago, Rock Island & Pacific Railway also reaches complainant's plant. The plant of the Buckeye Oil Company, engaged in the same business, is about 2,000 feet from complainant's plant in a southwesterly direction. In the immediate vicinity of the buildings of the Buckeye Cotton Oil Company is the plant of the Arkansas Fertilizer Company. Both of these last named concerns are near the tracks of, and are served by, the Chicago, Rock Rock Island & Pacific.

"Prior to 1906 the Buckeye Company was not reached by the Cotton Belt nor by the Iron Mountain. In April of that year these carriers entered into a contract under the terms of which the Iron Mountain agreed to construct a switch track leading from a point on the track of the Cotton Belt, about 1,000 feet south of complainant's plant, to the plants of the Fertilizer Company and the Buckeye Company. In consideration of the use by the Iron Mountain of the Cotton Belt's tracks from the junction and exchange point of the two lines to the point of the switch connection here in question, the latter was granted equal rights with the former in the use of the switch track to the two industries. After the contract was made and the switch was constructed, the plants on the switch track were treated as being on the tracks of both the Cotton Belt and the Iron Mountain. This gave these two concerns the services of both carriers, and no switching charges were made by either of them for the service of delivering cars to, and receiving cars from, those industries. On inbound carload shipments received from the Iron Mountain to be delivered to complainant, and received from complainant for delivery to the Iron Mountain, the Cotton Belt performs the service of hauling the cars about one mile and charges $3 per car. On competitive business, the Iron Mountain absorbs this

charge on both inbound and outbound traffic. Cars of freight reaching Argenta over the rails of the Iron Mountain, destined to the Buckeye plant, are moved to that industry free of charge, the entire track from the junction point with the Cotton Belt being considered part of the Iron Mountain's terminals. Cars of freight reaching Argenta over the Cotton Belt, destined to the Buckeye plant, are likewise moved to that industry free of charge, the tracks to the Buckeye plant being regarded as a continuation of the Cotton Belt's terminals. When carload freight, destined to complainant, reaches Argenta via the Cotton Belt, there is no charge for switching, complainant's plant being on the rails of the Cotton Belt. When carload freight from noncompetitive points, destined to complainant, moves to Argenta via the Iron Mountain, it is delivered to the Cotton Belt, which switches it to complainant's plant at a charge of $3 per car.

"As we understand it, the defendant's contention is that the Buckeye plant is situated on the rails of each carrier, and that the effect of the contract is to make the Iron Mountain switch a part of the tracks of the Cotton Belt, and the tracks of the Cotton Belt, to the extent they are used, a part of the tracks of the Iron Mountain. Defendants also contend that complainant's factory is not on the rails of the Iron Mountain, and therefore transportation of freight to it is made under circumstances different from those which obtain with reference to the Buckeye plant.

"It is not contended by the complainant that, if the rails of the Iron Mountain and Cotton Belt actually reached the Buckeye plant, it would be subjected to discrimination by the imposition of switching charges on shipments to it from noncompetitive Iron Mountain points. It is the general custom of all carriers by rail to haul freight from points on their respective lines to industries located on their own sidings without the imposition of switching charges. It is a well recognized practice among carriers to agree as to trackage rights and privileges between one

another for the common use of a part of the line of one in such a manner as to make the tracks subject to the agreement a part of both roads. In pursuance of the general practice, the Cotton Belt and Iron Mountain have made such arrangement respecting the spur track which runs to the Buckeye and Fertilizer plants. The Iron Mountain built the spur and needed the use of Cotton Belt tracks in order to reach it economically; the Cotton Belt needed the spur in order to reach the industries. The effect of the trackage agreement is to put the Buckeye plant on the lines of each carrier. There does not appear to be anything unreasonable or unjust in such an arrangement, or, so far as the record indicates, in the practices which have resulted from it. The free switching service rendered by both defendants to the Buckeye plant under the circumstances shown does not, in our opinion, constitute undue prejudice to complainant within the meaning of the act.

"It follows that the complaint should be dismissed, and it will be so ordered."

When the case was submitted in the circuit court the record before the Interstate Commerce Commission was offered in evidence, and it is said that the circuit court had before it not only this evidence, but also certain additional evidence, and such was the case; but it does not appear that the evidence before the circuit court was different in any essential particular from that offered before the Interstate Commerce Commission. Other facts will be stated in the opinion.

*E. B. Kinsworthy* and *T. D. Crawford,* for St. Louis, I. M. & S. Ry. Co.

1. There was no discrimination. It is not discrimination for a railroad to give switching service to an industry located on its track while denying such service to one not so located. 27 Int. Com. Com. 297; 159 Fed. 975; 12 Int. C. C. 480; 63 Fed. 775; 65 *Id.* 39; 110 U. S. 667; 104 Ga. 437; 55 Ill. 96; 88 Iowa 445; 192 U. S. 568; 37 Fed. 567; 118 *Id.* 169; 112 Pac. 980; 104 *Id.* 908; 217 U. S. 196; 38 Iowa 601; 68 S. E. 351; 32 Wash. 218; 198 U.

S. 483; 2 Int. Com. Com. 771; 117 U. S. 29; 212 U. S. 132; 56 So. 668; 22 Int. Com. Com. 163; 81 Miss. 41; 16 Int. C. C. 587; Barnes, Int. Transp., § 349; 97 Ark. 86; 76 *Id.* 239; 91 *Id.* 231.

2. Order 825 of the Railroad Commission is void. 2 L. R. A. 195; *Ry.* v. *Bellamy,* 215 Fed. 18; 217 U. S. 196.

3. The penalty provisions of the statute are void. 209 U. S. 123.

*S. H. West* and *Bridges & Wooldridge,* for St. Louis S. W. Ry. Co.

1. The Commission had no authority to make order No. 825, and there was no discrimination. 23 A. & E. Enc. Law (2 ed.), 653; 64 Ark. 271-275; 95 *Id.* 249; 212 U. S. 144; 68 S. E. 353; 198 U. S. 497; 215 *Id.* 105.

2. Order 825 violates the due process of law clause of the Constitution of the United States. 27 I. C. C. 295; 179 U. S. 287; 202 U. S. 543; 224 U. S. 510; 110 *Id.* 667; 192 *Id.* 567; 212 *Id.* 132.

*Wm. L. Moose,* Attorney General, *Robert L. Rogers, Morris M. & Louis M. Cohn,* for appellees.

1. Railroad companies can not make private contracts by which they undertake to disregard the duty cast upon them by the law and public policy which requires equal treatment to all shippers upon their lines. 209 U. S. 56; 200 *Id.* 361-391; 219 *Id.* 498-525; 94 Ark. 407-413; 85 *Id.* 311; 80 *Id.* 536; 92 *Id.* 573; 94 *Id.* 414; 191 Fed. 705; 120 Pac. 987, and many others.

2. No discrimination is allowed. 211 U. S. 619; 1 Int. C. C. Rep. 495; 50 Fed. 867; 74 *Id.* 522; 123 *Id.* 359; 85 Ark. 317; 84 *Id.* 150; 80 *Id.* 541; 148 Fed. 646; 191 *Id.* 543; 181 *Id.* 403; 167 U. S. 512; 12 Int. C. C. Rep. 114-308; 75 S. W. 945; 100 Pac. 273-276; 10 Int. C. C. Rep. 385, 1; 181 Fed. 403; 156 *Id.* 558; 174 *Id.* 107; 16 Int. C. C. Rep. 590; 167 U. S. 512; 226 *Id.* 286; 141 N. W. 1102. A railroad can not legally deny to one shipper switch connections or service which it affords to others similarly situated. 99 Fed. 472-481; 74 Kan. 808; 211 U. S. 612.

3.  Order 825 is valid, citing all the provisions of our statutes.

4.  Review the points and authorities cited by appellants and contend that it is a clear case of discrimination.

Smith, J., (after stating the facts). Respective counsel have cited and reviewed many cases and have evinced much learning and research in the presentation of their views regarding the powers and duties of the State Railroad Commission in prohibiting discrimination upon the part of common carriers against shippers. On a careful consideration of these briefs, we are led to the conclusion that there is no wide difference of opinion between counsel as to the duties of common carriers to serve all alike, and this case presents very largely a question of fact, as to whether or not any discrimination has been practiced against appellee Dixie Cotton Oil Company.

The trend of all modern legislation, upon the part of the Legislatures of the States of the Union, as well as of that upon the part of the Congress is to secure equal and just treatment and facilities to all shippers similarly situated and to prevent the giving of any preferences, or the making of any discrimination by any means whatsoever. And it may be said that this end has been accomplished, in so far as that result can be achieved by legislation, so that the law in general terms, as announced in numerous cases, may be said to be that railroad companies can not make private contracts by which they undertake to disregard the duty that is cast upon them by the law and the public policy which requires equal treatment to all shippers upon their lines. *Armour* v. *United States,* 209 U. S. 56; *N. Y., N. H. & H. Ry. Co.* v. *Interstate Commerce Com.,* 200 U. S. 361-391; *Southern Pac. Term.* v. *Inters. Com. Com.,* 219 U. S. 498-525.

The appellee Dixie Cotton Oil Company says it has not been thus treated, but that upon the contrary, it has been, and is now, being discriminated against in that the St. Louis, Iron Mountain & Southern Railway Company

(hereinafter called the Iron Mountain), does switching for the Buckeye Company for which no charge is made, whereas a charge of $3 for each car delivered to its own plant is made, when, as it is said, neither of the cotton oil companies is situated upon the line of the Iron Mountain railway company. The right of railroad companies to do switching free of charge for all industries located upon their lines is recognized. The Dixie Company is located upon the lines of both the Rock Island and the Cotton Belt railroads, and neither of those companies makes a charge against the Dixie Company for switching, for freight shipped over their lines. The Iron Mountain does make a charge against the Dixie Company because it says that company is not located upon its line. The right to make a switching charge for car deliveries to an industry not situated on the delivering carrier's line is recognized by all parties to this litigation, and the existence of this right is too thoroughly settled to be questioned here. So, as will be seen from this statement of the respective contentions, the questions here involved are chiefly questions of fact.

The order of the Railroad Commission complained of requires the railroad companies on and after the 15th day of October, 1909, and until the further orders of the commission, to desist and refrain from rendering switching services to the Buckeye Cotton Oil Company upon other or more favorable terms than are accorded by the railroad companies, or either of them, to the Dixie Company, and the said companies are required to perform switching services to and from the plant of the Dixie Company at and for the switching rates now maintained and charged by said companies against the Buckeye Company for similar services. This order of the commission could be complied with only by the acquisition of a spur track connecting the Iron Mountain railway company with the Dixie Company, or by refunding to that company the switching charges which it is required to pay the Cotton Belt Company for handling freight either outward bound or inward bound to it over the lines of the

Iron Mountain Railway Company, or by appellants abandoning their arrangement under which both companies reach the plant of the Buckeye Company and do switching for that company without making any charge therefor. The appellee Dixie Company says that it does not contend that the Iron Mountain Railway Company should be required to build a spur connecting the line of that railroad with its plant; but while it does not make that demand directly, this requirement is the alternative of its demand, and of the order of the Railroad Commission.

It must be, and is conceded, that the Railroad Commission has no authority to compel the Iron Mountain Company to build a spur to connect with the Dixie plant, as this plant is situated more than a mile from the track of that railroad company. The real question, therefore, is whether or not the railroad companies have the right to perform switching services for the Buckeye Company without charge. Appellee insists that the Buckeye Company is not situated upon the track of either of the appellant companies, and that it is only by a subterfuge that the contrary is made to appear. But we do not think the evidence supports this position. The proof shows that the Buckeye Company's plant, when originally erected, had switching facilities only over the tracks of the Rock Island railway company, and that it subsequently acquired at its own cost a right-of-way connecting its plant with the tracks of the Cotton Belt Company; and it entered into an arrangement with the Iron Mountain Company by which that company constructed a necessary track to make physical connection between the spur track which the Buckeye Company already owned and the main line of the Cotton Belt railroad. Having acquired this contractual right, appellant railroad companies entered into an agreement by the terms of which each used the tracks of the other so that each company was given an entry to the plant of the Buckeye Company. As a result of this arrangement, cars from the Iron Mountain tracks are hauled over the line of the Cotton Belt railroad to the junction of that railroad with the spur track which

connects with the Buckeye Company, and the cars are then switched over that spur to that plant. The Cotton Belt Company reaches the plant of the Buckeye Company by running over its own track to the junction with the Iron Mountain spur, and thence over this spur to the Buckeye plant. This arrangement is not unlawful, nor can it be said that it violates any public policy. Indeed, such arrangements are very common and are equally advantageous to the carrier and the shipper alike. Now, the real purpose of this litigation is not to disturb that arrangement, but to compel its extension, in other words, to require the railroad companies to enlarge the scope of their contract so that the Dixie Company may have free switching services of cars inbound or outbound over the Iron Mountain railroad. Of course, this is not asked directly, but it is the alternative of the relief which it seeks, both as the result of the order of the Railroad Commission which it procured that commission to make, and the litigation which it instituted for the recovery of penalties against the appellant railroad companies for the alleged discrimination.

It occurs to us that a fair statement of the position of the Dixie Company is to say that because the railroad companies have made a contract, which resulted in giving the Buckeye Company free switching service, that they should therefore be compelled to enlarge the contract so that it may have free switching services. The Dixie Company's plant is more than a mile from the main line of the Iron Mountain railroad, and it is 4,187 feet from the main line of the Iron Mountain railroad to the point of junction on the main line of the Cotton Belt with the Buckeye spur; and it is 1,545 feet from this spur junction to the point where the Dixie Company switch connects with the Cotton Belt railroad; and from this last mentioned switch it appears to be 632 feet still further to the Dixie plant. A part of the evidence heard before the court below, which was not offered at the hearing before the Interstate Commerce Commission, related to the manner in which switching was done for the Buckeye

Company by the appellant railroad companies.   There was evidence to the effect, that the Iron Mountain railroad in switching cars, which had been received over its line, to the Buckeye plant, frequently ran its engine beyond the point where the Dixie switch connects with the Cotton Belt, and that trains have been run as far on the line of the Cotton Belt railroad as the Dixie plant itself. But that fact is not controlling.   It is necessarily true that the Iron Mountain Railway Company would be compelled to use more of the track of the Cotton Belt railroad to afford switching facilities to the Dixie Company, than would be, or is required, to afford the same service to the Buckeye Company; and it does not follow that because these railroads have seen proper to enter into an arrangement which permits the joint use of a portion of their tracks that they must therefore contract for an enlarged joint use, whenever called upon so to do.   A statement of this position carries its own refutation.   If, because they had contracted for the joint use of a rod of their track, they could be required to contract for the joint use of a mile, there would be no limitation of the exactions of this nature which might be made against them.

The full measure of the duty of railroad carriers is to furnish equal facilities to all persons similarly situated, and we think the facts of this case clearly show the two cotton oil companies are not similarly situated.   The Iron Mountain Company does not reach the plant of the Dixie Company and could do so only by building more than a mile of track, or by acquiring from the Cotton Belt railway company the right to use its track into that plant.   No such duty is placed upon any railroad company.

This case does not involve the right of the Railroad Commission, in the proper exercise of the powers conferred upon it, to determine whether the public necessity and convenience requires the establishment of a spur track, because this proceeding was not had under the statutes conferring that authority upon the commission.

The right of the commission in such cases is discussed in the case of *St. Louis, I. M. & S. Ry. Co.* v. *State,* 99 Ark. 1. But this case does not involve any question of that authority. In the above cited case, however, it was held that an order of the Railroad Commission requiring the railroad company to build a spur track at a certain place is presumed to be reasonable and just, but may be reviewed by the court upon proof that it is so arbitrary and unreasonable as to be void for want of power, and that decision is authority for holding that the orders of the commission are not impervious to collateral attack. See, also, *St. Louis S. W. Ry. Co.* v. *State,* 85 Ark. 311.

Appellee says that the order of the Railroad Commission which forms the basis of these suits is conclusive until it has been reviewed and annulled by *certiorari.* But the two cases last cited are against this position, and permit an inquiry both into the authority of the commission, and the reasonableness of its orders, even in a collateral proceeding such as this is.

We conclude, therefore, that the court erred in its judgment, and this consolidated cause will be reversed and dismissed.