FT. WORTH & D. C. RY. CO. v. FRAZIER.
(No. 8474.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 9, 1916. Rehearing Denied Jan. 20, 1917.)

1. CARRIERS ⟨⟩20(3)—REGULATION—DISCRIMINATION—CONSTRUCTION OF PENAL STATUTE.
   Vernon's Sayles' Ann. Civ. St. 1914, arts. 6670, 6671, 6677, defining unjust discrimination by railroads in respect to special rates, rebates, drawbacks, etc., and declaring it an unjust discrimination for any railroad to make or give any undue or unreasonable preference or advantage to any particular person, under penalty recoverable by action, are to be strictly construed, and any doubt resolved in favor of the railroad.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 33; Dec. Dig. ⟨⟩20(3).]

2. PENALTIES ⟨⟩3 — STATUTORY PENALTY — RECOVERY.
   To recover a statutory penalty, plaintiff must bring his case strictly within the terms of the statute.
   [Ed. Note.—For other cases, see Penalties, Cent. Dig. § 3; Dec. Dig. ⟨⟩3.]

3. CARRIERS ⟨⟩20(3)—"UNJUST DISCRIMINATION"—CONSTRUCTION OF STATUTE.
   Vernon's Sayles' Ann. Civ. St. 1914, art. 6670, subd. 1, denouncing any undue or unreasonable preference or advantage to any particular person in respect to railroad's services as an unjust discrimination, without defining what constitutes such preference or advantage, is merely declaratory of the common law, under which it is an "unjust discrimination" for a common carrier, in the words of the statute, "to make or give any undue or unreasonable pref-

erence or advantage to any particular person," etc.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §. 33; Dec. Dig. ⟨⟩20(3).
   For other definitions, see Words and Phrases, Second Series, Unjust Discrimination.]

4. CONSTITUTIONAL LAW 208(3)—PRIVILEGES AND IMMUNITIES—CLASSIFICATION.
   Under Const. Tex. art. 1, § 3, providing that all freemen, when they form a social compact, have equal rights, and that no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services, and Const. U. S. Amend. 14, forbidding any state to make or enforce any law abridging the privileges or immunities of citizens of the United States, legislation may be enacted granting certain rights and privileges to one class of individuals to the exclusion of another class, providing such classification is reasonable.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 650; Dec. Dig. ⟨⟩208 (3).]

5. CARRIERS ⟨⟩20(3)—UNJUST DISCRIMINATION—TICKETS AND FARES—STATUTORY PENALTY.
   In an action under Vernon's Sayles' Ann. Civ. St. 1914, art. 6670, defining unjust discrimination by railroads for any service rendered, and subdivision 1, declaring it to be an unjust discrimination for any railroad to give any unreasonable preference or advantage to any particular person, under penalty recoverable by action, it appeared that plaintiff on Sunday afternoon purchased a ticket from W. over defendant's road, and that, on account of damage to the tracks from heavy rains, defendant on its first train out on Monday afternoon detoured its through passengers from W. over other roads to Ft. Worth, without any additional charge, and upon exchange for their tickets over its road from W. to Ft. Worth, and on that and the next day refused plaintiff such transportation, but on the following day gave him the same transportation as it gave to its other through passengers coming into W. on that day, upon exchange of his ticket and without additional fare, though the regular fare would have been more. Held, that plaintiff's circumstances were so dissimilar from those of defendant's through passengers as to furnish a reasonable basis for the refusal to carry him on the two days when he was refused transportation, and that any discrimination was between through passengers and plaintiff and others purchasing tickets at the station, and hence that there was no unjust discrimination.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 33; Dec. Dig. ⟨⟩20(3).]

6. CARRIERS ⟨⟩20(12)—PASSENGERS—UNJUST DISCRIMINATION—QUESTION FOR JURY.
   Under such provisions, the question of an unjust discrimination is usually one of fact for the jury; yet, when the facts are undisputed, and lead to but one reasonable conclusion, it becomes a question of law for the court.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 49; Dec. Dig. ⟨⟩20(12).]

7. CARRIERS ⟨⟩20(3)—PASSENGERS—UNJUST DISCRIMINATION—PENALTY.
   Under Vernon's Sayles' Ann. Civ. St. 1914, art. 6671, providing that, if any railroad shall permit any discrimination in respect to services rendered, it shall be guilty of unjust discrimination, and, in addition to resulting damages, subject to a penalty of not less than $125. a railroad which had twice refused plaintiff's demand that he be carried by the route over other roads by which through passengers were detoured from station where he purchased his tick-

et, in view of the highly penal nature of the statute, was not entitled to recover the minimum penalty, where the company on the third day detoured him by that route on exchange for his ticket and without additional fare.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 33; Dec. Dig. ☞20(3).]

8. CARRIERS ☞20(3)—UNJUST DISCRIMINATION—DELAY—STATUTE.

Vernon's Sayles' Ann. Civ. St. 1914, art. 6670, subd. 1, declaring it to be an unjust discrimination, subject to penalty, for any railroad to make or give any unreasonable preference or advantage to any particular person, or to subject any traffic to any delay, etc., contemplates delays caused by unjust discrimination in favor of other patrons of the road, and not a negligent delay separate and apart from such discrimination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 33; Dec. Dig. ☞20(3).]

Appeal from District Court, Wichita County; E. W. Nicholson, Judge.

Suit by J. E. Frazier against the Ft. Worth & Denver City Railway Company. Judgment for actual damages and for a penalty, and the defendant appeals from the judgment imposing a penalty. Reversed and rendered in part, as to the judgment for a penalty, and undisturbed as to the judgment for damages.

Carrigan, Montgomery & Britain, of Wichita Falls, for appellant. C. B. Felder, of Wichita Falls, for appellee.

DUNKLIN, J. At about 3 o'clock in the afternoon of June 6, 1915, which was Sunday, J. E. Frazier purchased from the station agent of the Ft. Worth & Denver City Railway Company at Wichita Falls a ticket over said railroad from Wichita Falls to Ft. Worth, Tex. At that time his residence was in Cooper, Tex.; but he had been visiting his daughter, Mrs. Archer Denny, and her family, who resided in Vernon, Tex., and on the day he purchased the ticket he had come from Vernon to Wichita Falls by his daughter and her husband in an automobile. When he purchased the ticket, he informed the ticket agent that he understood that his train was late, and that unless he could leave on that afternoon for Ft. Worth he would return to Vernon in the automobile in which he had journeyed to Wichita Falls. He was assured by the agent that the train, which was due in Wichita Falls at 3 o'clock p. m., would not be delayed more than two hours leaving there, and upon that assurance he bought the ticket, boarded the train, and after waiting until about 6 o'clock was informed by the railway officials that the train would not leave the station that afternoon, but would be delayed until the following morning. Upon receiving this information, he left the train and went to a hotel, where he remained until the following day. The train due to go out on the afternoon of the preceding day did not leave on Monday morning, as the agent had stated it would do.

On Monday afternoon, June 7th, when the next regular passenger train came in headed south in the direction of Ft. Worth, the railway company detoured its through passengers, coming in on that train, over the Wichita Valley Railway to Abilene, and from Abilene to Ft. Worth over the Texas & Pacific Railway, transporting them by that route without any additional charges for fare, giving them tickets over the roads named in exchange for tickets already held by them over the Ft. Worth & Denver City Railway from Wichita Falls to Ft. Worth. Frazier demanded of the railway company a like exchange of tickets for himself. In other words, he demanded transportation to Ft. Worth by way of Abilene on the same terms as was given to the through passengers, but this demand was refused. At that time the agent offered to sell Frazier a ticket over the Wichita Valley Railway to Abilene, but demanded the regular fare of $4.50, telling him he could there buy a ticket from that station to Ft. Worth over the Texas & Pacific Railway, and agreed to take up the ticket already held by Frazier over the Ft. Worth & Denver City Railway in exchange for the ticket to Abilene and allow him a credit therefor of $3.40, the amount he had paid.

On the afternoon of Tuesday, June 8th, when the regular south-bound passenger train came into Wichita Falls over the Ft. Worth & Denver City Railway, that company again detoured its through passengers to Ft. Worth by way of Abilene in like manner as was done on the previous day, and without any additional railroad fare from such passengers, and on that occasion Frazier again demanded transportation to Ft. Worth by the same route, without the payment of any fare additional to that which he had already paid for his ticket purchased on Sunday afternoon, June 6th, but this demand was also refused. But on Wednesday afternoon the Ft. Worth & Denver City Railway Company gave him tickets to Ft. Worth via Abilene, the same as was given other passengers coming into Wichita Falls on that date, and without charging him any additional fare; those tickets being given in exchange for the ticket he held already.

The price paid by Frazier for the ticket purchased over the Ft. Worth & Denver City Railway from Wichita Falls to Ft. Worth was $3.40, while the regular passenger rate from Wichita Falls over the Wichita Valley Railway to Abilene, and from Abilene to Ft. Worth over the Texas & Pacific Railway, was approximately $9. The failure of the Ft. Worth & Denver City Railway Company to run its trains from Wichita Falls to Ft. Worth on June 6th, 7th, 8th and 9th was caused by damage to its track following heavy rains.

The discrimination made against Frazier

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was also made against all other persons holding tickets purchased in Wichita Falls, but on Wednesday, June 9th, all such persons who so desired were also detoured to Ft. Worth via Abilene, without payment of extra fare. Some of the through passengers mentioned had bought tickets to Ft. Worth from the Ft. Worth & Denver City Railway Company at points in Texas west and northwest of Wichita Falls.

The foregoing facts were uncontroverted.

Frazier instituted this suit against the Ft. Worth & Denver City Railway Company to recover actual damages sustained by him by reason of the delay in his trip to Ft. Worth, so caused, and also for the statutory penalties for alleged unjust discrimination against him by the company, under and by virtue of articles 6670, 6671, and 6677, Vernon's Sayles' Texas Civil Statutes, and from a judgment in his favor on the verdict of the jury for $14 actual damages, and for a penalty of $125, the railway company has appealed.

Those portions of article 6670 of the Statutes which are material to the present controversy are as follows:

"If any railroad subject hereto, directly or indirectly, or by any special rate, rebate, drawback or other device, shall charge, demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered by it than it charges, demands, collects or receives from any other person, firm or corporation for doing a like and contemporaneous service, such railroad shall be deemed guilty of unjust discrimination, which is hereby prohibited.

"1. It shall also be an unjust discrimination for any such railroad to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or to subject any particular description of traffic to any undue or unreasonable prejudice, delay or disadvantage in any respect whatsoever. * * *

"4. Any railroad company violating any provision of this article shall be deemed guilty of unjust discrimination, and shall for each offense pay to the state of Texas a penalty of not less than five hundred dollars nor more than five thousand dollars."

### Article 6671:

"In case any railroad subject to this chapter shall do, cause to be done, or permit to be done any matter, act or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter or thing herein required to be done by it, such railroad shall be liable to the person or persons, firm or corporation injured thereby for the damages sustained in consequence of such violation; and in case said railroad company shall be guilty of extortion or discrimination as by this chapter defined, then, in addition to such damages, such railroad shall pay to the person, firm or corporation injured thereby a penalty of not less than one hundred and twenty-five dollars nor more than five hundred dollars, to be recovered in any court of competent jurisdiction in any county into or through which such railroad may run: Provided, that such road may plead and prove as a defense to the action for said penalty that such overcharge was unintentionally and innocently made through a mistake of fact: Provided, that any recovery as herein provided shall in no manner affect a recovery by the state of a penalty provided for such violation."

### Article 6677:

"Any * * * provisions of this chapter which may be inconsistent or in conflict with the act of 1907, chapter 42, page 93, relating to free passes and free transportation of goods, etc., incorporated in and made a part of the Penal Code of the state of Texas, shall be void and inoperative, but to that extent only. And the provisions of the foregoing articles of this chapter shall not have the effect to release or waive any right of action by the state, or any person, for any right, penalty or forfeiture which may have arisen or may hereafter arise under any law of this state; and all penalties accruing under this chapter shall be cumulative of each other, and a suit for or recovery of one shall not be a bar to the recovery of any other penalty."

In his petition, plaintiff alleged that, by reason of the facts recited above, there was an unjust discrimination against him on June 7th and June 8th, entitling him to a recovery of the prescribed statutory penalties in addition to the actual damages sustained by him. His allegations with reference to the discrimination on June 7th were as follows:

"Defendant failed and refused to detour plaintiff via Abilene, Tex., to his destination at Ft. Worth, Tex., and did fail and refuse to transport plaintiff over its own roads or tracks, but did detour and transport the said ——, and other passengers, via Abilene, Tex., which persons and passengers, or some of them, were destined to Ft. Worth, Tex., and were fellow passengers similarly situated with plaintiff, and that such acts, conduct and refusal and omission constituted an unjust discrimination against the plaintiff, and subjected defendant to the penalties prescribed by law in the sum of five hundred dollars."

Substantially the same allegations were made with reference to the unjust discrimination on June 8th. Plaintiff further claimed the statutory penalty for the demand by the railway agent on June 7th of the regular fare of $4.50 for transportation from Wichita Falls to Abilene, while other passengers were carried for fare in a smaller amount, and a further penalty for the unreasonable delay caused by his failure to reach Ft. Worth sooner.

Among other defenses, the railway company pleaded, substantially, that the acts complained of in plaintiff's petition did not constitute unjust discrimination under the statutes because of the fact that plaintiff was not similarly situated to other through passengers who were detoured by way of Abilene without extra charge for transportation; that those passengers, who had already started upon their journey from other points, would have been stranded in Wichita Falls if they had not been so detoured; that the defendant was under no legal obligation to transport the plaintiff to Ft. Worth by way of Abilene over the other two railroads upon the ticket already held by him; that the transportation of its passengers over the other two roads by way of Abilene was due to the destruction of the defendant's track between Wichita Falls and Ft. Worth from unavoidable causes. Defendant further alleged that, if the statutes should authorize the recovery of the penalties claimed in

plaintiff's petition, then such penalties would be so unreasonable and extortionate as to render the statutes obnoxious to the constitutional provision prohibiting excessive fines and penalties.

At the outset it should be noted that the railway company makes no complaint of the judgment for the actual damages awarded, but complains only of the judgment for the penalty.

The court charged the jury, in part, as follows:

"(I) You are instructed that the law provides that it is an unjust discrimination for any railroad company to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality.

"(II) Now, if you find and believe from a preponderance of the evidence in this case that the plaintiff on June 6, 1915, purchased from the defendant company a ticket to convey him from Wichita Falls, Tex., to Ft. Worth, Tex., and if you further find and believe from the evidence that the defendant company, its agents, servants, or employés, represented to plaintiff, before plaintiff purchased said ticket, that defendant company would run its said train to Ft. Worth, Tex., that evening, and if you further find and believe from the evidence that, on account of said floods, said train was not run to Ft. Worth that day, and if you further find and believe from the evidence that on the next day, June 7th, the defendant company carried its other passengers holding tickets to Ft. Worth, or that vicinity, over the Wichita Valley Railroad, and by way of Abilene, Tex., to Ft. Worth, and if you further find from the evidence that plaintiff requested of the defendant, its agents, servants, or employés, to detour him with its other passengers to Ft. Worth, by way of Abilene, and said defendant company refused so to do, and if you further find by reason of the facts hereinbefore mentioned that defendant company unjustly and unreasonably discriminated against the plaintiff in said matter, then you will find for the plaintiff a penalty of not less than $125 and not more than $500, and in addition thereto if you find for the plaintiff for said penalty then if you find and believe from the evidence that he was compelled to expend money for his board and lodging, after the time said train left for Abilene, and before plaintiff left, then you will find for him such sum, if any, as you may find he is entitled to under the evidence, provided you find the sum to be reasonable, not to exceed the sum of $4. And you may further find for him for loss of time, if any, such a sum as you may find that he is entitled to under the evidence, provided the charge therefor is reasonable, not to exceed the sum of $10."

Thus it will be seen that the only issue submitted to the jury as a basis for the verdict for the penalty of $125 awarded was whether or not, on June 7th, in detouring its through passengers from Wichita Falls to Ft. Worth, Tex., by way of Abilene, over the other two railroads mentioned, without charging additional fare, and in refusing to accord to plaintiff the same privilege, the railway company gave "any undue or unreasonable preference or advantage to any particular person," under the provisions of subdivision 1, article 6670, of the statute.

[1] H., E. & W. T. Ry. Co. v. Campbell, 91 Tex. 551, 45 S. W. 2, 43 L. R. A. 225, was a suit to recover a statutory penalty for failing to furnish cars upon demand, and in that case our Supreme Court said:

"The statute imposes a heavy penalty, and it is an elementary rule that such statutes must be strictly construed. This does not imply that the courts are authorized to refuse to give effect to the intention of the Legislature, but it proceeds upon the theory that it is not reasonable to presume it is their intention to impose punishment, except in so far as that purpose is clearly manifested by the language employed in the statute. It results, as a corollary from this rule, that the penalty will not be awarded in a case which does not come strictly within the terms of the statute. Such is the established canon of construction in this court. Schloss v. Railway Co., 85 Tex. 601 [22 S. W. 1014], and cases there cited."

And in G., C. & S. F. Ry. Co. v. Dwyer, 84 Tex. 200, 19 S. W. 470, the following was said:

"Every man is presumed to know the law, and it would seem that before any one should be punished, either in a criminal or a civil action, for an act claimed to be penal, the offense should be clearly defined, and that any grave doubt as to the intention of the Legislature should be resolved in favor of the defendant."

In M., K. & T. Ry. Co. v. State, 100 Tex. 424, 100 S. W. 766, the following was said:

"It is a well-established principle of statutory construction that penal statutes must be strictly construed in determining the liability of the person upon whom the penalty is imposed, and that the more severe the penalty, and the more disastrous the consequence to the person subjected to the provisions of the statute, the more rigid will be the construction of its provisions in favor of such person and against the enforcement of such law. Suth. Stat. Constr. § 322; Potter's Dwaris, 244."

In Thompson v. M., K. & T. Ry. Co., 103 Tex. 378, 126 S. W. 259, 128 S. W. 109, the following quotation from Sedgwick on Statutory and Constitutional Law, referring to penal statutes, was cited with approval:

"The rule that statutes of this class are to be construed strictly is far from being a rigid or unbending one, or rather it has in modern times been so modified and explained away as to mean little more than that penal provisions, like all others, are to be fairly construed according to the legislative intent as expressed in the enactment; the courts refusing, on the one hand, to extend the punishment to cases which are not clearly embraced in them, and, on the other, equally refusing by any mere verbal nicety, forced construction or equitable interpretation, to exonerate parties plainly within their scope."

[2] It is also well settled that, in order to recover a statutory penalty, the plaintiff must bring his case strictly within the terms of the statute.

[3] Subdivision 1 of article 6670, quoted above, denounces "any undue or unreasonable preference or advantage to any particular person," etc., as an unjust discrimination, but it does not define what would constitute such preference or advantage. That question is left to be determined by the general principles of the common law. Thus it will be seen that subdivision 1 is nothing more than declaratory of the common-law rule, for in the authorities unreasonable preferences or advantages and unreasonable discriminations

are used interchangeably as having the same meaning.

In Hutchinson on Carriers, § 302, the author uses the following language:

"The same principles become important in determining what, if any, discrimination may lawfully be made by the carrier in the rate charged to different shippers. This is a question of great importance and one which has recently been much considered. The cases contain many statements which seem to be in conflict, yet, except where the consideration is influenced by local statutes, it is believed that all the cases are in substantial harmony in reference to the vital principles involved. At the foundation of the whole matter lies the common-law rule, just and well settled, that in each particular case there shall be charged a reasonable compensation and no more. In this, as in every other case, the question of what is reasonable depends upon the circumstances of each particular case, and this ordinarily becomes a question of fact. A reasonable compensation in each case does not, however, necessarily mean absolute uniformity of rates in all cases. It simply requires that there shall be no unreasonable, and hence no unjust, discrimination. Mere inequality in charges does not, therefore, of itself, amount to an unjust discrimination. It only becomes such when a discrimination is made in the rates charged for transportation of the goods of the same class of different shippers under like circumstances and conditions. So a mere reduction from the established rate is not necessarily an unjust discrimination. But it becomes such when it is either intended or has a natural tendency to injure another shipper in his business and destroy his trade by giving to the favored shipper a practical monopoly of the business."

See, also, the same author, sections 297, 298, 301. And the same rule is applicable to fares for passengers. Hutchinson on Carriers, § 567a.

In a note on pages 647, 648, of 11 Am. St. Rep., there is a collation of authorities which hold that if a common carrier charges one of its patrons for its services the tariffs fixed by statute, or, in the absence of such a statutory regulation, a reasonable rate, then he cannot complain of any unjust discrimination against him, even though a lower rate is given to other patrons under the same or similar circumstances and conditions. Some of those authorities are Johnson v. Pensacola, etc., Ry. Co., 16 Fla. 623, 26 Am. Rep. 731; Fitchburg Ry. Co. v. Gage, 12 Gray (Mass.) 393; Sargent v. Boston, etc., Ry. Co., 115 Mass. 416. But in the same note it is stated that, according to the more modern rule of interpretation, the carrier must not charge any of its patrons a higher rate than is charged others similarly situated and under the same circumstances, even though the fees charged the former are not in excess of the reasonable value of such service, or more than the amount fixed by statute. Many authorities are cited in support of that statement, such as Chicago, etc., Ry. Co. v. People, 67 Ill. 11, 16 Am. Rep. 599, Indianapolis, etc., Ry. Co. v. Rinard, 46 Ind. 293, and McDuffee v. Portland, etc., Ry. Co., 52 N. H. 430, 13 Am. Rep. 72. A note substantially to the same effect, and with a like citation of authorities, is contained in 60 Am. Dec. 149, 150.

In Scofield v. Railway Co., 43 Ohio St. 571, 3 N. E. 907, 54 Am. Rep. 846, the authorities holding to those two views of the common-law rule are reviewed quite extensively, and with reference thereto the following is said:

"In some of the cases it is announced that upon the question of whether the law requires a common carrier to transport goods upon equal terms to all, or whether it only requires that the rate shall be reasonable, but not necessarily equal to all, has been differently determined by the courts of England and America. Ragan v. Aiken, 9 Lea (Tenn.) 609, 42 Am. Rep. 684. But, be that as it may, the tendency and undoubted weight of authority is in favor of the doctrine that a common carrier is charged with a quasi public duty to transport merchandise on equal terms for all parties, where the carrying for some shippers at a lower price than for others will create monopoly by injuring or destroying the business of those less favored."

The different authorities are also reviewed, and the same conclusion reached, in Interstate Commerce Commission v. B. & O. Railway Company, 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699.

The more modern interpretation of the common-law rule is also approved by Hutchinson on Carriers in section 302, copied above, and we believe such to be the correct interpretation. According to that interpretation, it is an unjust discrimination, under the common law, for a common carrier "to make or give any undue or unreasonable preference or advantage to any particular person," etc., just the same as is forbidden by subdivision 1, article 6670, of the Statutes.

[4] In the light of the foregoing conclusions, we shall now proceed to discuss the question whether or not the action of the railway company on June 8th in detouring its through passengers to Ft. Worth over the Wichita Valley Railway and the Texas & Pacific Railway, by way of Abilene, upon tickets held by such passengers, without charging any additional fare, and denying to plaintiff, Frazier, the same privilege, without paying any fare in addition to the $3.40 already paid by him for a ticket from Wichita Falls to Ft. Worth over the Ft. Worth & Denver City Railway, was an unjust discrimination against him within the meaning of subdivision 1 of article 6670, as found by the jury.

If the circumstances and conditions applicable to the situation occupied by Frazier were substantially similar to those occupied by the other passengers who had purchased their tickets at other points and had already traveled thereon to Wichita Falls, then the statute was violated, and the railway company became liable for the penalty prescribed; but if those conditions were dissimilar in a material respect, and such difference furnished a reasonable basis for such action on the part of the railway company, then there was no infringement of the statute.

The first portion of article 6670, and subdivision 1, following the same, are very similar to sections 2 and 3 of the federal Interstate Commerce Act enacted February 4,

1887 (see 24 Stat. 379), and which read as follows:

"Sec. 2. That if any common carrier subject to the provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful.

"Sec. 3. That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

The requirement of the federal act that the same charges should be made for a like and contemporaneous service "under substantially similar circumstances and conditions" was substantially the same as the duty imposed by the common-law rule. The federal courts have often discussed the meaning of those terms as applicable to facts of different cases, and as they are impliedly written into the provisions of article 6670 referred to above, such federal decisions are at least strongly persuasive in the present suit.

In Interstate Commerce Commission v. B. & O. Ry. Co., 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699, it was held that a charge of a smaller rate by a railroad company for the transportation of ten or more persons on a party rate ticket than was charged a single individual for the same trip, although it created a clear inequality and discrimination, did not give to the former an undue or unreasonable preference, or subject the latter to an undue or unreasonable disadvantage, within the meaning of the Interstate Commerce Act quoted above, by reason of the fact that the different charges so made were not under substantially the same circumstances and conditions. And upon that issue the following was quoted with approval from the opinion of Judge Jackson in the court below:

"To come within the inhibition of said sections (2 and 3), the differences must be made under like conditions; that is, there must be contemporaneous service in the transportation of like kinds of traffic under substantially the same circumstances and conditions. In respect to passenger traffic, the positions of the respective persons, or classes, between whom differences in charges are made, must be compared with each other, and there must be found to exist substantial identity of situation and of service, accompanied by irregularity and partiality resulting in undue advantage to one, or undue disadvantage to the other, in order to constitute unjust discrimination."

To the same effect is Interstate Commerce Commission v. Alabama, M. R. Co., 168 U. S. 144, 18 Sup. Ct. 45, 42 L. Ed. 414.

In Gamble-Robinson Commission Co. v. C. & N. W. Ry. Co. (by the Circuit Court of Appeals), 168 Fed. 161, 94 C. C. A. 217, 21 L. R. A. (N. S.) 982, 16 Ann. Cas. 613, it was held that the discrimination made by the railway company between shippers over its road, in demanding prepayment of charges for freight from one and giving credit therefor to others, did not subject the plaintiff to undue or unreasonable prejudice or disadvantage, within the meaning of the Interstate Commerce Act. See the opinion in that case for other authorities substantially to the same effect.

In St. L., I. M. & S. Ry. v. State (by the Supreme Court of Arkansas), 112 Ark. 147, 165 S. W. 251, the Iron Mountain Railway, by building a spur direct to the Cotton Belt Railway and by giving the latter railway permission to use the spur, and in return therefor getting permission to use the Cotton Belt road, was enabled to eliminate switching charges to one mill which made shipments over the Iron Mountain. There was another mill connected by a spur track with the Cotton Belt, but as it was not included in the contract between the two roads, it was required to pay switching charges for shipments over the Iron Mountain. In that case it was held there was no discrimination between the two mills, since, under the facts, they were not similarly situated. See, also, H. & T. C. Ry. Co. v. Rust, 58 Tex. 98.

The statute prohibiting undue discrimination is not more positive or explicit in its terms than article 1, § 3, of our state Constitution, which provides that:

"All freemen, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

Nor the language of the Fourteenth Amendment of the federal Constitution, providing that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It is a familiar rule that, notwithstanding the plain and explicit language of those constitutional provisions, legislation may be enacted granting certain rights and privileges to one class of individuals, to the exclusion of another class, provided such separation into classes is reasonable; the theory of those decisions being that if the circumstances and conditions of those excluded from the class are different, there is no discrimination against them. See 8 Cyc. 1051; Insurance Company v. Chowning, 86 Tex. 656, 26 S. W. 982, 24 L. R. A. 392.

[5] In the present suit it will be noted that the railway company treated all of its through passengers alike, granting them the same privileges, thus placing them in a class separate and distinct from those who purchased tickets at Wichita Falls, whom it placed in a separate class, and made no distinction between them. The discrimination complained of was between those two classes. It was in favor of all the through passengers alike as one class, but not in favor of "any particular person," within the meaning of subdivision 1 of article 6670, if it can be said that there was a reasonable basis for such a classification. And as the rules for statutory construction apply also in the construction of the constitutional provisions (8 Cyc. 729), it seems to us that the authorities upon the question of reasonable classification of subjects in legislation, which are held not to be inimical to the Constitution, are in point upon the question of whether or not the railway company unduly discriminated against the plaintiff in the present suit. Many of such authorities might be cited in which the reasons for the classification, which are upheld as valid, are not so cogent as the reasons which prompted the railway company in making the discrimination between its passengers buying tickets at Wichita Falls and its through passengers. Only a few of such authorities will be referred to. Nash Hardware Company v. Morris, 105 Tex. 217, 146 S. W. 874 (by our Supreme Court), in which it was held that the bulk sales law, which invalidates any sale of a stock of merchandise in its entirety, unless prior notice is given to the creditors, was not unconstitutional as class legislation, even though it should be held that it is restricted to retail dealers and does not apply to wholesale dealers, and even though it discriminated in favor of certain creditors, as contended in that case, since it applied alike to all merchants of that class.

In Supreme Lodge, U. B. A., v. Johnson, 98 Tex. 1, 81 S. W. 18, it was held that the exemption of the Order of Railway Conductors, the Order of Locomotive Engineers, and other such orders specifically mentioned, from the operation of an act of the Legislature regulating fraternal beneficiary associations, was not subject to the objection that it violated either the Constitution of the state or the federal Constitution, guaranteeing equal protection of the law to all citizens. See, also, St. L., S. F. & T. Ry. v. Taylor, 134 S. W. 819; Marchant v. Railway, 153 U. S. 389, 14 S. Ct. 894, 38 L. Ed. 751; 6 R. C. L. §§ 364, 369, 370, 372, 374, 416, 400.

The facts recited above show conclusively that the circumstances and conditions under which the through passengers over the defendant's road were placed when they arrived at Wichita Falls were materially and substantially different from the situation of the plaintiff, who had not begun his trip, and that, therefore, it cannot be said that in detouring the through passengers to Ft. Worth by way of Abilene on June 7th, and refusing the same privilege to the plaintiff on that day, was an unjust discrimination within the meaning of that portion of subdivision 1, article 6670, which was submitted in the trial court's charge. The through passengers had made contracts for transportation different from that which was made by the plaintiff, and paid prices different from what he paid, and a failure of the railway company to detour them necessarily would have left them stranded in Wichita Falls, unless they had seen fit to buy other tickets from the other roads over which they were detoured. Nor do we think that the fact that plaintiff had come from Vernon to Wichita Falls from the home of his daughter in an automobile, and had thus started his trip to Ft. Worth, could make any difference, since the railway company had nothing to do with that part of his trip.

[6] While it is true that usually the question of an unjust discrimination is one of fact, to be passed upon by the jury, yet, when the facts are undisputed, as in the present suit, and as presented lead to but one reasonable conclusion, it becomes a question of law for the courts to decide without submitting it to the jury.

It follows that appellant's first assignment, complaining that there is no evidence to support the verdict of the jury for the alleged unjust discrimination occurring on June 7th, in refusing to detour the plaintiff to Ft. Worth under the same terms as it detoured its through passengers, must be sustained, and that appellee's first cross-assignment, in which he complains of the refusal of the court to give a peremptory instruction in his favor for a recovery of the statutory penalty for the same discrimination on June 8th as was made on June 7th, must be overruled.

[7] Plaintiff also requested a peremptory instruction for a verdict in his favor for the statutory penalty for the demand made by the railway company on June 7th and June 8th for fare at the regular statutory rate of three cents a mile as a charge for detouring him to Ft. Worth by way of Abilene, the same being in excess of the amount he had already paid for his ticket from Wichita Falls to Ft. Worth over the Ft. Worth & Denver City Railway, while on those dates through passengers were being carried without any such extra charge. That requested instruction was refused by the court, and the plaintiff has not presented any cross-assignment of error to that ruling; but he insists that, as the evidence without controversy established the fact that such demand was made, he was entitled to recover at least the minimum penalty of $125 for that demand, and that by reason of that fact alone appellant's assignments of error should be overruled.

While it is true that the railway company

did, on June 7th and 8th, refuse to detour the plaintiff without the payment of fare additional to that which he had already paid for his ticket, yet it finally withdrew that refusal and detoured him to Ft. Worth on Wednesday, June 9th, without the payment of any extra fare. In the opinion of the majority, this of itself, independent of other conclusions stated by us in this opinion, furnishes a sufficient reason for overruling the contention now under discussion. The statute invoked is of a highly penal character, and it would be unreasonable to hold that the railway company, having once violated it, would be denied the privilege of making the proper amends and complying with it. If the contention of appellee be sound, then it would follow that, even though the railway company withdrew the demand in ten minutes after it was made and had then detoured the plaintiff to Ft. Worth, as requested, without any delay, the penalty would still have been recoverable, and as many penalties as there were demands made during the same day. Plaintiff recovered actual damages for the delay, of which the railway company makes no complaint, and as it finally detoured plaintiff and carried him to Ft. Worth, he cannot recover the penalty for the demand made, which was afterwards withdrawn, and the service accepted.

[8] It is further insisted, by way of reply to appellant's assignments, that as the evidence showed without controversy that plaintiff was delayed in reaching Ft. Worth, and as there was no proof offered by the railway company to show that the washout of its tracks between Wichita Falls and Ft. Worth, which rendered it unable to run its trains over the track, was not due to any negligence on its part, and as the burden was on the defendant to make such proof, that a cause of action for unreasonable delay was made out in his favor, which, under subdivision 1, article 6670, entitled him to at least a minimum penalty of $125. In answer to that contention, it is sufficient to say that the delay contemplated by the statute is such as is caused by unjust discrimination in favor of other patrons of the road, and not a negligent delay separate and apart from such discrimination.

The foregoing conclusions render it unnecessary to decide the further question whether or not the statute giving a right to a penalty would apply in the present suit, in any event, in view of the fact that the railway company owed no statutory duty to detour its passengers over the other two railroads; in other words, whether or not such a situation was reasonably within the contemplation of the Legislature in enacting that statute, even though it could be said that, having assumed to render the service to other passengers, it owed the duty at common law to render the same service to the

plaintiff upon the same terms, and that it would be liable to him for actual damages for failure so to do. Upon that question, see Interstate Commerce Commission v. D. G. H. & M. Ry. Co., 167 U. S. 633, 17 Sup. Ct. 986, 42 L. Ed. 306, Younts v. S. W. Tel. & Tel. Co. (C. C.) 192 Fed. 200, and authorities there cited.

For the reasons indicated above, the judgment of the trial court for the penalty of $125 is reversed, and judgment is here rendered in favor of appellant, denying plaintiff recovery of any of the penalties alleged in his petition; but the judgment in favor of plaintiff for $14 actual damages and costs of the suit in the court below, of which no complaint is made upon this appeal, is undisturbed.

Reversed and rendered in part; undisturbed in part.