## WIGHT v. POLICE JURY OF PARISH OF AVOYELLES, LA., et al.

(Circuit Court of Appeals, Fifth Circuit.   June 18, 1919.)

Nos. 3341–3344.

1. **Constitutional law** ☜278(2)—**Highways** ☜90—**Due process not denied because of lack of notice of contemplated formation of road districts.**

   Const. La. art. 292, providing for the division of parishes into road districts and defining their taxing and bond issuing capacity, and Act La. No. 183 of 1914 and other statutes carrying the constitutional provisions into effect, do not deny due process, because not providing for notice to taxpayers of the contemplated action of police juries in forming road districts, as the roads are to be constructed for the general good and the expense met by a general property tax, and in such case no property owner is entitled to specific notice of the formation of a road district.

2. **Highways** ☜126—**Benefit from construction of roads presumed.**

   Where roads are constructed for the general good, and the expense is met by a general property tax, and not by a tax on the specific property benefited, there is an absolute presumption of benefit.

3. **Highways** ☜127(2)—**Disproportion between taxes paid and benefits received not unconstitutional.**

   Where roads are constructed for the general good, and the expense is to be met by a general property tax, the fact that some persons may pay small taxes and receive great benefit, and others pay considerable taxes and receive limited benefits, is not an inequality of the character of which the Constitution takes cognizance.

4. **Constitutional law** ☜278(2)—**Right to sue to test legality of proceedings does not cure want of due process.**

   The right to institute suit to test the regularity of the proceedings to hold an election to issue bonds for road purposes does not make that due process of law which would otherwise be an arbitrary taking of property.

5. **Constitutional law** ☜278(2)—**Limiting right to sue to test the validity of proceedings does not make notice essential to due process.**

   The limiting of suit to test the regularity of bond issues by a road district to 60 days from the election authorizing them does not prevent that from being due process of law which would otherwise be, or confer a right to notice of the formation of the district which does not otherwise exist.

6. **Constitutional law** ☜283—**Taxing railroad for construction of road not invalid, though harmful competition results.**

   Taxing the property of a railroad company with other property for the construction of a contemplated highway does not take its property without due process of law, even though the highway brings harm to the railroad in resulting competition, as by motor vehicles.

7. **Highways** ☜90—**Act limiting time to test validity of bond election inapplicable, where election unauthorized.**

   Act La. No. 256 of 1910, § 17, limiting the time for suit to test the validity of an election on the question of issuing bonds for road purposes to 60 days, does not apply if the election is called by a body not authorized, to be voted at by persons not authorized, and for purposes not authorized.

8. **Highways** ☜90—**Extent to which Legislature may limit attack on bond issue election stated.**

   It is within the power of the Legislature to preclude inquiry into the regularity or formality of an election on the question of issuing bonds for road purposes after a short period of prescription, but it cannot take from property owners the right to have their burdens measured by the limits of

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
264 F.—45

the Constitution, though the election is not attacked within such time, nor compel an officer to act contrary to the Constitution, merely because no one has questioned the legality of that which has been done within the period of prescription.

**9. Highways ⬤═90—Statute limiting time for contesting legality of election valid, when limited to certain matters.**

Act La. No. 256 of 1910, § 17, limiting the time for contesting the legality of an election on the question of issuing bonds to 60 days, and providing that thereafter it shall not be an excuse for refusal to levy a tax or issue bonds that some provision of the Constitution or law of the state has not been complied with, is valid as applied to requirements of the Constitution or laws of the state, compliance with which involves questions of fact.

**10. Highways ⬤═90—Limiting attack on legality of bond issue election to 60 days reasonable.**

The limitation of 60 days for contesting the legality of an election on the question of issuing bonds prescribed by Act La. No. 256 of 1910, § 17, *held* reasonable.

**11. States ⬤═4—State may determine rights to be recognized by state Constitution, and time and manner of assertion.**

Except as limited by the Constitution of the United States and the laws made in response thereto, a state may determine the rights to be recognized or conferred by the state Constitution, and determine how and when and under what circumstances such rights may be asserted.

**12. Highways ⬤═90—Statute limiting time for asserting rights under state Constitution or laws not necessarily invalid.**

Act La. No. 256 of 1910, § 17, though construed as entirely depriving taxpayers after 60 days of the right to attack an election on the question of issuing bonds and the resulting bonds and taxes for noncompliance with the Constitution or laws of the state, is not necessarily invalid under the Constitution of the United States, as it would still be open to the taxpayer to assert any right he might have under the Constitution and laws of the United States.

**13. States ⬤═4—State courts bound to enforce rights under federal Constitution and laws.**

It is the duty of a state court to support and enforce the Constitution and laws of the United States, and even though a special law of limitations precludes consideration of objections to a bond issue based upon the state Constitution and laws, rights under the Constitution and laws of the United States may still be asserted.

**14. Courts ⬤═375—Limitation of time for attacking election not binding on federal court with respect to rights under federal Constitution and laws.**

While the laws of limitation and prescription of the states are ordinarily applied by the courts of the United States Act La. No. 256 of 1910, § 17, does not preclude consideration by the federal courts of any objection to a bond issue election arising out of rights asserted under the Constitution and laws of the United States.

**15. Courts ⬤═366(1)—Federal courts ordinarily follow state court's construction of state laws and Constitution.**

As a general rule the courts of the United States will follow the construction placed by the state courts on state constitutional provisions and statutes, but the rule is subject to exceptions.

**16. Highways ⬤═125—Tax for road purposes limited to specified amount, but tax as basis for bond issue not so limited.**

Under Const. La. arts. 281, 291, 292, as construed by state courts, a special parish or ward ad valorem tax to be directly applied to roads and bridges is limited to 5 mills on the dollar for five years, but taxes as a

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

basis for debts and bond issues by a road district are governed by article 281, authorizing a tax of 10 mills.

**17. Highways ⟨key⟩90, 125—Each road district held entitled to issue bonds and impose taxes to specified amount.**

Under Const. La. art. 281, authorizing municipal corporations, parishes, road districts, etc., to incur debts and issue negotiable bonds and impose a tax sufficient to pay the interest and principal, provided that such special tax "for all purposes as above set forth" shall not exceed 10 mills on the dollar, and that the total issue of bonds by any subdivision for all purposes shall never exceed 10 per cent. of the assessed valuation, it is the tax and bond issue of each road district or other subdivision which is limited to the amount stated, and not the taxes or bond issues of all the subdivisions embracing in whole or in part the same territory.

**18. Highways ⟨key⟩125—Tax for road purposes valid, except for excess above constitutional limit.**

Under Const. La. art. 281, limiting taxes for road purposes to 5 mills on the dollar, a tax of 6 mills is valid, except to the extent to which the constitutional limit is exceeded.

**19. Highways ⟨key⟩122—Act curing defects in proceedings for road district taxation valid.**

Act La. No. 18, Sp. Sess. 1917, ratifying proceedings of police juries and boards of supervisors of road districts with reference to special taxes and bond issues, does not violate the state or federal Constitution, as applied to acts of police juries under Act La. No. 183 of 1914, after the performance of such duties had been transferred to boards of supervisors by Act. La. No. 199 of 1916.

**20. Statutes ⟨key⟩104—Validating act cannot do what Legislature could not otherwise do.**

The Legislature cannot by a validating act accomplish that which it could not have done primarily on account of the limitations of the Constitution.

**21. Highways ⟨key⟩90—Informalities and irregularities in road district election as to matters within legislative power may be validated.**

The Legislature may determine the body by whom an election on the question of issuing bonds by a road district is to be called, how notice shall be given, the form of the ballot, the manner of voting, and by whom the result is to be declared, and informalities and irregularities as to such matters may therefore be cured by a validating act.

Appeals from the District Court of the United States for the Western District of Louisiana; Rufus E. Foster, Judge.

Four suits by Pearl Wight, as receiver of the Texas & Pacific Railway Company, against the Police Jury of the Parish of Avoyelles, La., and others, against the Police Jury of the Parish of Natchitoches, La., and others, against the Police Jury of the Parish of Rapides, La., and others, and against the Police Jury of the Parish of St. Landry, La., and others. From adverse judgments, plaintiff appeals. Judgment in the first suit modified in part, and affirmed in part, and judgments in the other suits affirmed.

W. B. Spencer, of New Orleans, La. (Howe, Fenner, Spencer & Cocke, of New Orleans, La., on the brief), for appellant.

Lewis R. Graham, of New Orleans, La. (G. L. Porterie, of Marksville, La., and Sigur Martin, of New Orleans, La., on the brief), for appellees police jury of Avoyelles parish and others.

D. C. Scarborough, of Shreveport, La., and Phanor Breazeale and

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

M. L. Dismukes, both of Natchitoches, La. (J. F. Stephens, of Coushatta, La., and Breazeale & Breazeale and Scarborough & Carver, all of Natchitoches, La., on the brief), for appellees police jury of Natchitoches parish and others.

John Ransdell Hunter, of Alexandria, La., for appellees police jury of Rapides parish and others.

E. B. Dubuisson, W. J. Sandoz, and Peyton R. Sandoz, all of Opelousas, La., for appellees police jury of St. Landry parish and others.

Before PARDEE and BATTS, Circuit Judges, and GRUBB, District Judge.

BATTS, Circuit Judge. The receiver of the Texas & Pacific Railway Company instituted suits against the police juries of the parishes of Avoyelles, Natchitoches, St. Landry, and Rapides, to restrain the collection of taxes in road districts in the parishes named. The allegations of the several bills present the same major issues.

*Due Process of Law—Notice and Hearing.*

The cases depend upon construction of provisions of the Constitution and statutes of Louisiana authorizing creation of road districts and the levy of taxes and issue of bonds by the districts, and upon a determination of whether these laws as written and as practically applied take property of taxpayers without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States. The first proposition made by complainant is that—

"The Constitution and laws of Louisiana, relative to the creation of road districts and the imposition of special taxes for the construction and maintenance of roads therein, in and of themselves, as interpreted and applied by police juries, are in violation of the Fourteenth Amendment of the Constitution of the United States, in that they deprive petitioners of their property without due process of law."

[1] Article 292 of the Constitution of Louisiana, as published after the convention of 1913, provides for the division of parishes into road districts, and defines the taxing and the bond-issuing capacity of the districts. Such legislation as is necessary to make the constitutional provisions effective is provided by Act No. 183 of 1914 and preceding statutes. The Constitution provides that "Police juries of this state may form their respective parishes into road districts." No provision is made by the Constitution or a statute for notice to taxpayers of contemplated action by the police jury in the formation of districts, and in none of the cases under consideration was notice given. Provisions are made for notice of bond and tax elections, and for publication of the result, and the terms of the law have, in these respects, in each instance been observed.

It is contended that the law as written and administered is unconstitutional, because the law does not require notice, and no opportunity is in fact given the taxpayers to be heard on the questions of the necessity or advisability of the creation of a road district, nor as to boundaries, nor as to whether property to be included would be benefited, nor as to the rate and duration of the tax, or the amount of the bonds.

Communication, transportation, and commerce are distinguishing elements of civilization. To their development highways are essential. The construction and maintenance of good roads has been accepted universally as a function of government. In the United States there was an early recognition of the right of the general government to construct, or aid in the construction of, national highways; but the duty of providing roads was primarily in the states, and in the states the duty remains.

After the success of the steam railroads was demonstrated, the attention of the federal and state governments was, for a number of years, especially directed towards their development. Aid was extended by the United States, by the states, by counties, parishes, and municipalities. Though these highways have, ordinarily, been privately owned, the right of the states to levy taxes and appropriate property to help in their construction, and to authorize like action by their governmental subdivisions, has almost uniformly been sustained.

The extraordinary development of the country has brought about conditions under which the needs for transportation facilities can no longer be met by the railroads, and by the inferior dirt roads along which the pioneers have made their weary and wasteful way. Communities which have heretofore recognized the necessity of freeing themselves from the burdens of ignorance, and have provided public schools, have come to realize that getting out of the mud is another essential step to that end. They realize that good roads are the complement of the schoolhouse; that isolation is not only an ally of ignorance, but of poverty; that prosperity in farming, trading, or manufacturing waits on transportation and communication.

A tardy recognition of these fundamental facts has brought about activity in the issue of bonds and the levy of taxes for road purposes. The national government is taxing all the people that great interstate highways may be constructed. States are taxing all their people that roads within the state may be built. In many states subdivisions have been made, or recognized, and authority given to the taxpayers therein to supplement the efforts of the state and national governments. These subdivisions for roads do not, ordinarily, take the form of improvement districts, in which specific property receiving peculiar benefits is assessed in proportion to the benefits, but are based upon the idea that the taxpayers are doing a proper part in the building up of systems of roads connecting all the sections of the country, and from which they, and everybody else, must derive a benefit.

In the state of Louisiana, the parish is primarily used as the unit for road purposes; but, lest this division of the state should not bring the necessary local co-operation and supervision, provisions have been made for dividing the parishes into road districts, which, under the terms of the Constitution, became governmental subdivisions of the state. The legislation as to these governmental units recognizes that the needs of the public with reference to roads may be more imperative in some parts of the state than in others. It recognizes, also, that in some parishes or parts of parishes the people

may be willing to tax themselves for good roads, while in others the conditions may be such that the taxes cannot be levied.

The creation of road districts is vested by the Constitution in the police juries of the several parishes. It is a legislative authority doubtless well assigned. It may be assumed that the necessary action can better be performed by a body more familiar with local conditions and needs than by the state Legislature. No taxpayer, and no other person, would ordinarily have a right to interfere with or participate in the exercise of this power. It is conceivable that, even in defining the necessary governmental subdivisions, the people, acting in their primary power in the formation of their Constitution, or acting through their Legislature, or acting through a special legislative body, as in the present case, might lay off the lines in such an arbitrary, unjust way, with such a palpable purpose to destroy or confiscate property, that the protection of the Constitution would not be denied. But such a possible case is not immediately under consideration.

Complainant makes the proposition that the grant of power to the police jury violates the Constitution of the United States, because no provision is made by which he, as a taxpayer, may be heard with reference to the advisability of action under the authority, or in the manner in which the authority is to be exercised. There is no constitutional requirement of special notice to any particular individual of contemplated action of a general nature by a governmental body exercising general legislative or administrative functions. The taxpayer in a proposed road district has no more right to notice of a division of the state by the proper authority into road districts than to notice of the creation of a new parish or of the division of the parish into justice wards.

The governmental functions are carried on in a public way. The forces which exist to compel conformity of public action to public opinion are open to everybody. Except in those cases in which action is contemplated directly affecting the right of an individual, as distinguished from action affecting the public generally, no person has more right to specific notice than all other persons. It is assumed that all people interested in public affairs will acquire a knowledge of what is taking place among those to whom the conduct of public affairs has been trusted. And so long as the officers are acting within their authority, redress for improper conduct is political, instead of judicial.

There are certain classes of improvement districts, not supported by direct taxation, and with reference to which definite rules for determining benefits and assessments have not been prescribed by the law, where the rule may be different. Drainage, irrigation, sewerage, and street-paving districts may be of this character. In districts of this kind, the improvement may be general and the expense met by general taxes, or the improvements may bring general public benefits and also direct benefits to particular property, and the expense be met by general taxes and specific assessments, or the direct benefits to particular property may be so great, as compared to the general

benefits, that equity is approximated by direct assessments in proportion to these direct benefits.

In those cases in which improvement districts are formed for the direct benefit of the property within the district, and the method of meeting the expenses of the improvement is to determine the specific benefits and to fix upon each property owner an assessment in proportion, and where the law designates no method of determining the benefit and assessment other than by a reference to some commission or other tribunal, a matter of fact is presented directly involving the property rights of individuals, and each person affected must have an opportunity to produce for consideration the facts pertinent to his individual case. If this opportunity is not given, even the fact that the assessment was fair may not meet the objection that the property owner is deprived of a constitutional right.

Doubtless the laws could provide for road districts, in which improvements would be made for the benefit of specific property and the improvement met by assessments against such property. The Constitution and statutes of Louisiana, however, make no provision for such improvement districts. The districts under consideration are not of this character. They are special taxing districts for the general good. They enable the construction of good roads from which every person in the state may be expected to receive some direct or indirect benefit. To undertake to apply to such governmental activities the rules which are invoked with regard to drainage, irrigation, or other improvement districts of that character would be to entirely destroy the possibility of efficient governmental action.

[2, 3] The laying out, the construction and maintenance, of public roads, are not matters to be determined with reference to benefits to particular individuals, but with reference to the interest of all those persons whose rights and property and general well-being are the chief concern of government. No property owner is entitled to specific notice of the formation of a road district in which the roads are to be constructed for the general good, and in which the expense is to be met by a general property tax. He is not entitled to notice of an action which the law assumes equally affects all citizens. He is not entitled to notice, in order that he might protest against the inclusion or exclusion of his property. The law contemplates that all of the property of the state may go into some district, and it is for the law-making power, and not the individual property owner, to determine the boundaries of the district. He is not entitled to notice to enable him to show that the formation of the district, with its possible tax, will bring him no benefit. There is an absolute presumption of benefit from governmental activities of this character. In the levy of road taxes, as in all other taxes, some persons may pay small amounts in the way of taxes and receive great benefits, and other persons may pay considerable taxes and receive limited benefits. This inequality is inherent in all taxation and in all governmental activities. While, however, there may not be equality in the benefit to be derived from roads, it is not that character of inequality which the law is capable of eliminating, and not that character of inequality of which the Constitution

takes cognizance. These road taxes are of the same general character as school taxes, held to be legal, and to meet the constitutional requirements of uniformity, notwithstanding many taxpayers are entirely without direct benefit.

[4, 5] In another connection is discussed that part of the act providing for road districts, and the issue of bonds, which limits the period within which the legality of the election may be attacked. Appellant insists that this limited right to sue does not take the place of notice and a primary right to be heard. The right to institute suits even for a limited time, to ascertain the regularity of the proceedings, is a very substantial right. This right, however, would not make that due process of law which would otherwise be an arbitrary taking of property. If the taxpayer has the right to notice of the formation of the district, the right is not preserved by a right to institute a suit. If he has such a right, it is a fundamental one, arising under the Constitution and laws of the United States, which will be protected. But the circumstance that a court will give protection against an unconstitutional act does not purge the act of unconstitutionality. On the other hand, the limiting of this period of suit to 60 days does not prevent that from being due process of law which would otherwise be, and does not confer a right to notice which does not otherwise exist.

*Arbitrary and Unfair Action in Defining Districts.*

Appellant makes the statement that certain of the districts have been arbitrarily laid out, with a view of including the property of the railroad company, and for the purpose of compelling him to pay taxes on this property, and without any benefit to the property, but in order that the property of others might be benefited. The proposition that the laying off of a district, with a view of benefiting some property at the expense of other property not benefited, would result in the taking of property without due process of law, in violation of the Constitution, is ordinarily made with reference to improvement districts, in which the payments chargeable against particular property is based upon direct benefits received.

It is conceived, however, that any subdivision of the state might be territorially so defined that protection would have to be given against arbitrary, unreasonable, and confiscatory action. While the relief would usually be against local boards, action by a state Legislature might demand relief from the courts. All of the rules which have been announced with reference to districts of any kind recognize the possiblity of unjust, unreasonable, arbitrary action. The courts, while going far to sustain action creating districts and levying taxes and making assessment, nevertheless give efficient life to the constitutional provision which prohibits the taking of private property without due process of law.

Recent cases by the Supreme Court of the United States leave little to be said on the subject, and remove all difficulty in giving constitutional protection without unduly interfering with state and local activities, so essential to the maintenance of progressive prosperity. Myles Salt Co. v. Iberia Drainage District, 239 U. S. 478, 36 Sup.

Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190, determined upon a consideration of the complaint alone, presents the case of a drainage district, confessedly laid out to include property in order that it might be taxed, without expectation or intention that it should receive benefits. The Supreme Court said:

"There is no doubt that the Legislature of a state may constitute drainage districts and define their boundaries, or may delegate such authority to local administrative bodies, as in the present case, to the police juries of the parishes of the state, and that their action cannot be assailed under the Fourteenth Amendment unless it is palpably arbitrary and a plain abuse. Houck v. Little River Drainage District, 239 U. S. 254. * * * The charge is that plaintiff's property was included in the district, not in the exercise of 'legal legislative discretion,' not that the scheme of drainage would inure to the benefit of the property, even indirectly, but with the predetermined 'purpose of deriving revenues to the end of granting a special benefit to the other lands subject to be improved by drainage, without any benefit' to plaintiff 'or its property whatever,' present or prospective. * * * It is to be remembered that a drainage district has the special purpose of the improvement of particular property, and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation. Wagner v. Baltimore, 239 U. S. 207. We are not dealing with motives alone but as well with their resultant action; we are not dealing with disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by considerations not of the improvement of plaintiff's property but solely of the improvement of the property of others—power, therefore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind."

The following cases further elucidate the subject: Houck v. Little River Drainage District, 239 U. S. 254, 36 Sup. Ct. 58, 60 L. Ed. 266; L. & N. R. R. Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 Sup. Ct. 466, 49 L. Ed. 819; Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763; Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616. In no one of the cases before us for consideration is the property of appellant included "solely with the view of deriving income" from it. In each case benefit will accrue to the property indirectly, if not directly. The degree of benefit may be disputable, but the fact of benefit should not be questioned. There is no proof of improper motives, and no sufficient basis for a suggestion of such motives.

[6] The finding of the master is, as to one or more of the districts, not only that there will be no benefit to the railroad company whose property is involved, but that the construction of the contemplated highway will bring harm in resulting competition. Even if such an incidental effect could follow from the discharge by the state of its duty with reference to roads, that fact would furnish no constitutional ground for an attack upon the law under which the road was constructed. As to those matters strictly within the domain of government the aggregate benefits may alone be considered. Perhaps in few instances does a taxpayer receive direct benefit from every department of government. Many taxpayers are so fortunate that they have no occasion to appeal to the courts. Many taxpayers are so unfortunate that they cannot utilize the schools. There are doubt-

less departments of government of which a majority of the people have never heard. Perhaps the benefits of public roads are more nearly universally distributed than the good that comes from any other single activity of government.

It is hardly possible to conceive a business that is not benefited by good roads. The suggestion that railroads will be injured by making other highways capable of being used would be expected from that class of political economists who demonstrated that laboring men would be injured by the introduction of machinery. No business is so entirely dependent upon the development of the country as the railroads. They reflect the prosperity of the people they serve, and suffer with their reverses. The railroad whose property is taxed in these cases has spent much of its life in the hands of receivers. Its only insurance against the continuance or recurrence of this condition is the development of the rich country it traverses. And this development is not possible without the construction of roads.

When taxes have been levied to aid in the construction of railroads, they have been paid by all property owners, including the owners of vessels and of wagons and teams, engaged in carrying freight and passengers. That their businesses were destroyed did not make the taxes illegal, nor were they even exempt from the tax that destroyed them. If it were true—as it cannot be—that the construction of roads would result in disastrous competition from motor vehicles, the legality of the tax would not be affected. Public utilities operated by municipalities have frequently been sustained in part by taxes on competing plants. The general and usual effect of government is beneficent, and all property must help in its maintenance. An individual or corporation may sometimes be legally harmed beyond the possibility of an offsetting benefit. Even the busy and efficient Fourteenth Amendment is sometimes powerless to eliminate the inequalities resulting from government, and it is seldom able to prevent the destruction which comes with progress.

There are findings in the report of the master at variance with these conclusions. The report is based upon evidence before us. We do not concur in the findings. There is not sufficient evidence, as to any one of the road districts, to support a finding that the police jury has acted from improper motives, or that improper or illegal results have been brought about. Certainly, in no case has the action "been palpably arbitrary and a plain abuse."

*Section 17 of Act 256 of 1910—Prescription of Action.*

Fifth Point.—Appellant's "fifth point" is to this effect:

"Plaintiff is not estopped or precluded at this time from questioning the validity of the bonds and taxes in question."

In elucidation of this point he makes the following additional proposition:

"That the limitation of time within which action may be brought under section 17 of Act 256 of 1910, giving to this section its most liberal interpretations, is confined to and relates only to suits contesting the regularity, formality, and legality of elections held in pursuance thereof. If, however, the prescription established by said section of said act be construed as a bar to funda-

mental and constitutional objections, it is void and unconstitutional. It is not competent for the Legislature to provide that the constitutionality of an act passed by it shall not be contested unless such action be begun within a limited time."

## Section 17 of Act 256 of 1910 provides:

"That, for a period of sixty days from the date of the promulgation of the result of any such election, any person in interest shall have a right to contest the legality of such election for any cause; after which time no one shall have any cause of action to contest the regularity, formality, or legality of said election for any cause whatever. If the validity of any election held under the provisions of this act is not raised within the sixty days herein prescribed, then no governing authority of any subdivision herein named, required to levy a tax or issue bonds as authorized at an election or under this act, shall be permitted to refuse to perform that duty and urge as an excuse or reason therefor, that some provision of the Constitution or law of Louisiana has not been complied with, but it shall be conclusively presumed that every legal requirement has been complied with, and no court shall have authority to inquire into such matters after the lapse of sixty days as herein provided."

[7, 8] The law of which this is a part, provides for the calling of an election, to be held in a prescribed way, at which resident taxpaying voters shall determine whether bonds may be issued for prescribed purposes, in an amount limited by the Constitution. If the election be one called by a body not authorized, to be voted at by persons not authorized, for purposes not authorized, the section would have no application. Assuming the election to be one to which the article applied, a period of 60 days is prescribed after the promulgation of the result, within which any person in interest shall have the right to contest the legality of the election for any cause. It is prescribed that after this time no person shall, for any cause, contest the regularity, formality or legality of the election. It is clearly within the power of the Legislature to preclude inquiry into the regularity or formality of the election after a short period of prescription. If by the "legality of the election" is meant anything more than that the election was held in the way prescribed by law, the meaning certainly cannot be so extended as to make it the effect of the law that a failure to attack the election would bring about consequences which could not have been accomplished by a valid election. If persons charged with the duty of administering these constitutional provisions, and the legislation enacted in response to them, should disregard the constitutional limitations, failure to attack their action for 60 days could not, ordinarily, be held to give validity to that which would otherwise be void. No act of the Legislature can take away from the property owner, whose property is affected, the right to have constitutional burdens measured by the limits of the Constitution. Nor can the Legislature compel an officer to do that which is contrary to the Constitution, and therefore fundamentally illegal, merely because no one had chosen, within the period of the prescription, to question the legality of that which had theretofore been done.

[9] But, whether the law may be upheld as a whole or not, it is certainly constitutional in part; and, given a construction of which it is susceptible, there is no trouble in sustaining it in its entirety. The

propriety of such legislation may be easily maintaned. The exigencies of the government may require the issue of bonds. There may be, and ordinarily are, excellent reasons why, if any character of attack upon the bonds is to be made, it should be made before they are sold to the public. Questions could arise as to whether the proper notices had been given, and as to whether certain persons were qualified voters, and as to the amount of property which the voters respectively owned, and as to whether or not a majority in number of the voters, and in amount of their property, have cast their votes in favor of the proposition, and, indeed, as to compliance with any one of the provisions of the law.

Public and private interest require that all these questions be promptly and definitely settled. The Constitution of Louisiana, as that of most of the states, does not confine itself to promulgating general political principles and providing a framework of government, but enters the domain of legislation, and contains many provisions to which should be applied the same rules of construction and interpretation as to statutes. The application of some of these provisions is dependent upon matters of fact, and the same rules for determining facts, and the same effect of such determination, can properly be invoked. To illustrate:

Paragraph 2 of article 281 of the Constitution, with reference to drainage districts, applies one limitation of taxation and assessment where lands are capable of being drained without pumping, and another where pumping is required. The application of the constitutional limitation is determined by the determination of a matter of fact. The ordinary rules for determining facts are, or could be made, applicable, and there is nothing to prevent the Legislature from fixing a period within which the courts are open, and after which a presumption as to the facts may govern. The Supreme Court of Louisiana, in Crow v. Supervisors, 141 La. 1017, 76 South. 182, in which the act under consideration was discussed, used this language:

"The lawmaker has provided a method by which certain public works may be construed, through the taxation of property, * * * and in so doing has recognized the right of the owners * * * to raise all the legal and constitutional objections that they think proper, but it has * * * declared that the right so recognized must be exercised in time, and not throughout eternity."

We do not understand that the court intends, by the use of this language, to suggest that constitutional provisions may be disregarded, and that, after the lapse of the short period prescribed by the act, the result is the same as if the limitations of the Constitution did not exist. The case under consideration called for no such comprehensive statement, and other holdings of the opinion negative such an intention.

The views of the court are doubtless expressed by the opinion in Daigle v. Opelousas, G. & N. E. Ry. Co., 124 La. 1047, 50 South. 846. The case was one in which a justice ward, as distinguished from a police jury ward, held an election under Act 202 of 1898, to carry into effect article 270 of the Constitution of 1898. The court held that

no election could be legally had in such a subdivision, and used this further language:

"If this conclusion be correct, the police jury of the parish was absolutely without authority to order the election, and the situation is the same as if no election had been held, and prescription is not applicable. Esteves v. Board, 121 La. 991, 46 South. 992. In Dimmick v. Opelousas, G. & N. E. Ry. Co., 123 La. 123, 48 South. 767, the court drew a clear distinction between a suit contesting an election and a suit to annul a tax voted at a void election. If a void election cannot be cured by prescription, it cannot be cured by the mere inaction of taxpayers."

The opinion in Crow v. Supervisors further, however, says:

"And the power of the state to limit the time within which rights, whether derived from Constitutions or elsewhere, are to be asserted, in her courts, is as well recognized as the rights themselves."

[10, 11] If by this is meant that statutes which are unconstitutional may be enforced, if not attacked within the prescribed periods, or if it be held to mean that officers are under obligations to do things prohibited by the Constitution, if they are not directed by the courts within certain periods to abstain from doing them, the proposition made is not in accord with recognized principles. As applicable to the facts of the particular case decided, and as applied to facts which bring into effect provisions of the Constitution, no objection can be made to the proposition. It is certainly not beyond the power of the state to prescribe reasonable periods of limitation; and, under the circumstances to be considered in connection with the legislation here involved, it cannot be said that the period is so limited as not to be reasonable. Except as limited by the Constitution of the United States and the laws made in response thereto, it is within the power of the state to determine the rights to be recognized or conferred by the state Constitution, and to determine how and when and under what circumstances these rights may be asserted. Limited to the facts involved in Crow v. Supervisors, or controlled by the language in Daigle v. O., G. & N. Ry. Co., there should be no hesitancy in sustaining the act as constitutional and effective under the Constitutions of Louisiana and of the United States.

[12, 13] Even if broader meaning be given, and it be held that the courts of Louisiana are, after the 60 days, entirely closed to taxpayers who desire to attack the election and the resulting bonds and taxes, it does not necessarily and certainly follow that the legislation, of which the section under consideration is a part, violates the Constitution of the United States. Nothing more could even then be said than that it had been determined by the courts of Louisiana that the courts of the state were open for a reasonable period to assert, with reference to the creation of road districts and the issue of bonds by them, any right that any person might have under the Constitution and laws of Louisiana, and that that period having elapsed, the courts were no longer open to him for that purpose. The Legislature will have declared certain results from a failure to apply to the courts within a prescribed time. The courts will have declared the act not in conflict with the Constitution. Even under such a construction, the taxpayers

will have had an opportunity of contesting in the state courts all ques- tions that could arise under the state Constitution and laws. And neither the Constitution nor any statute has provided, nor any deci- sion of any court of Louisiana held, that the courts of the state are not open to him to assert any right he may have under the Constitu- tion and laws of the United States. It is a part of the duty of a state court to support and enforce the Constitution and laws of the United States; and, even where the conclusion may be reached that a special law of limitation had precluded consideration of objections based upon the Constitution and laws of the state, there would still be the duty upon the courts to consider and determine rights asserted under the Constitution and laws of the United States.

[14] The laws of limitation and prescription of the several states are, ordinarily, applied by the courts of the United States. Such an application, however, of section 17 of the act of 1910, would not pre- clude a consideration by the federal courts of any question arising out of rights asserted under the Constitution and laws of the United States. There is no proper construction of the section which would hold that more is intended than to prescribe objections based upon state constitutional and statutory grounds.

It is not necessary to do more than hold that, 'as construed by the courts of Louisiana, section 17 of Act 256 of 1910 does not limit to 60 days. the period within which an appeal may be made to the courts of that state to prevent the collection of taxes levied in road districts, in violation of. the Constitution of Louisiana or of the Constitution of the United States.

*Bond-Issuing Capacity of Road Districts.*

A question to be determined prior to a consideration of the construc- tion of article 281 is whether a road district has a power of taxa- tion under this article. In the case of Hayne v. Assessor, 143 La. 697, 79 South. 280, taxation for road purposes is considered, and the his- tory of articles 291, 292, 232, and 281 reviewed. It is recited that article 291 is found in the Constitution of 1898, under the title "Pub- lic Roads," and deals alone with taxes, debts, and bonds for roads and bridges. The article authorized police juries, with the consent of property taxpayers, to levy special taxes, not to exceed 5 mills for 5 years, for road and bridge purposes, but conferred no authority to incur debt or issue bonds, and "the evident purposes of its amend- ment and readoption pursuant to Act 236·of 1912, was to supply that omission."

"Finding, apparently," says the court, "that the restrictions im- posed upon the exercise of such authority by articles 232 and 281 were sufficient, * * * the people, * * * in adopting the amend- ment to article 291, included those restrictions merely by reference to the articles. * * * But the General Assembly did not propose, nor did the people adopt, any change in the rate of special taxation for road and bridge purposes. * * * The conclusion reached was that, while a 10-mill tax, running 40 years, or more, might be needed for other improvements, * * * a 5-mill tax for 5 years was all that was required for road and bridge purposes."

The constitutional convention of 1913 consolidated articles 291 and 292, and eliminated the provision in the original article 291 authorizing "other taxes * * * for road and bridge purposes, not to exceed 5 mills for 5 years." It is explained that this was done because this part of the article was in conflict with articles 281 and 232. The Supreme Court holds that the convention had no authority to make the amendment. The holding of the court upon the case presented was:

"We conclude, then, that the 10-mill rate of taxation, established for road and bridge purposes by article 281, as amended pursuant to Act 197 of 1910, was superseded by the 5-mill rate, re-established by article 291, as amended pursuant to Act 236 of 1912. We therefore concur with the judge a quo in the opinion that the road tax in question is unconstitutional, and that plaintiffs cannot be compelled to continue its payment."

[15] As a general rule, the courts of the United States will follow the construction placed by the state courts on state constitutional provisions and state statutes. There are important exceptions. Where state decisions have been followed under conditions making them rules of property rights, changes in the decisions may substantially constitute the taking of property without due process of law, in which event the courts of the United States may feel obliged to adhere, with reference to rights arising prior to the change, to the old rulings. In those cases in which the effect of the state decisions is in doubt, the federal court may be under the necessity of making a decision without reference to expressions from the state court. Where unequivocal dicta are in conflict with prior unequivocal decisions, no definite rule defines the duty of the federal court.

[16] In the cases of Bolinger v. Police Jury of Bossier Parish, 141 La. Ann. 596, 75 South. 423, Lebeau v. Police Jury, 140 La. Ann. 172, 72 South. 914, and Crow v. Board of Supervisors, 141 La. 1017, 76 South. 182, was involved the constitutionality of legislation based upon the taxing power conferred by article 281 of the Constitution, and the legislation was sustained. In the last-named case the validity of the bonds attacked necessarily depended upon a taxing power in excess of 5 mills. That part of the opinion in Hayne v. Assessor which says that article 281 confers no power of taxation for road purposes is necessarily inconsistent with the validity of bonds shortly theretofore declared valid by the same court. The case before the court in Hayne v. Assessor did not deal with taxes to support a bond issue, but to be used directly for road purposes. In so far as the opinion is applicable to the case decided, we are under obligation to follow it. In so far as it refers to the bond-issuing capacity under article 281, we feel that the dictum must be disregarded in deference to opinions of the court in cases directly involving that article. Article 292 authorizes police juries to issue negotiable bonds for the construction and maintenance of public roads and bridges "in the manner and to the extent authorized under the provisions of article 281." Article 281 authorizes a road district to issue bonds to the amount of 10 per cent. of its taxable values, to run for 40 years, with interest, and requires an annual tax to pay interest and principal payable, and

to provide a sinking fund. A tax of 5 mills for 5 years could not provide for bonds in the amount authorized, payable in 40 years. It will be observed, also, that the taxing power conferred by article 291, as construed by the Supreme Court, is limited to the "parish or any ward" thereof. If a road district be other than a ward, it would, under the construction, probably be entirely without a taxing power, and therefore entirely without a bond-issuing capacity. In view of the syllabus prepared by the court, limiting the effect of the opinion to the case before it, in view of almost contemporaneous decisions in conflict, but not, in terms, overruled, and in view of the results on prior bond issues to follow a different conclusion, it will be held that the Supreme Court limits the special parish or ward ad valorem tax to be directly applied to roads and bridges to 5 mills for 5 years, but that the taxes to be used as the basis for debts and bond issues by a road district are defined by article 281.

[17] Appellant's "third point" is as follows:

"Article 281 of the Constitution of Louisiana limits the amount of bonds to be issued, and the rate of taxation to be imposed for the liquidation thereof. These limits were exceeded in the road districts herein mentioned, and rendered the action of the governing authorities void."

Territory in some of the road districts is also in school or other districts, and the total of bond issues for which some property is taxed exceeds 10 per cent. of the assessed value. Appellant contends that the bond-issuing and taxing powers are exceeded.

Those parts of article 281 of the Constitution of Louisiana having a bearing upon the propositions now under consideration are as follows:

Article 281, § 1:

"Municipal corporations, parishes and school, drainage, subdrainage, road, subroad, navigation, or sewerage districts, city of New Orleans excepted, hereinafter referred to as subdivisions of the state, when authorized by a vote of a majority in number and amount of the property taxpayers, * * * who vote at an election held for that purpose, * * * may, through their respective governing authorities, incur debts and issue negotiable bonds therefor, and each year while any bonds thus issued are outstanding, the governing authorities of such subdivisions shall impose and collect annually, in excess of all other taxes, a tax sufficient to pay the interest, annually or semiannually, and the principal falling due each year, or such amount as may be required for any sinking fund necessary to retire said bonds at maturity: Provided, that such special taxes, for all purposes as above set forth, shall not in any year exceed ten mills on the dollar of assessed valuation of the property in such subdivisions.

"No bonds shall be issued for any other purpose than that stated in the submission of the proposition to the taxpayers, * * * or for a greater amount than therein mentioned; nor shall such bonds be issued for any other purpose than for constructing, improving and maintaining public roads and highways, paving and improving streets, roads and alleys, purchasing and constructing systems of waterworks, sewerage, drainage, navigation, lights, public parks and buildings, together with all necessary equipment and furnishing, bridges and other works of public improvement, the title to which shall rest in the subdivision creating the debt, as the case may be nor shall such bonds run for a longer period than forty years from their date or bear a greater rate of interest than 5 per cent. per annum, or be sold for less than par. The total issue of bonds by any subdivision for all purposes shall never exceed 10 per

cent. of the assessed valuation of the property in such subdivisions. Municipal councils are granted the authority to create within their limits one or more sewerage districts."

It is the contention of appellant that the total bond-issuing capacity of the nine subdivisions of the state authorized by the quoted article combined is 10 per cent. of the assessed value, and that if any property should, by reason of action taken under the article by one or more subdivisions, be subjected to a tax of more than 10 mills on the dollar, the tax would be void. The point involved seems not to have been heretofore passed on by the courts of the state. In the case, however, of Washington State Bank v. Baillio, 47 La. Ann. 1471, 17 South. 880, article 209 of the former Constitution was under consideration. That article authorized a 10-mill tax for a parish or municipal corporation, and it was held that this tax marked the limitation for the town and the limitation for the parish, and not the aggregate of the taxes of both. Language used in the opinion may pertinently be applied in the construction of article 281. It is suggested that—

"If the view prevailed that the parish and town tax together were subject to the 10-mill limitation, then the tax of either might exclude or leave little scope for a tax by the other."

The point has very much more force when applied to nine subdivisions than when used alone with reference to two. If, for instance, the municipal corporation within a parish should issue bonds to the limit of the article, and vote taxes to that amount, the authority of parishes and schools, roads, navigation and sewerage districts would thereby be nullified. If the voters in the school district should conclude to issue bonds to the amount of 10 per cent. of the assessed value, there could be no road bonds, no municipal bonds, nor bonds of any of the other subdivisions named. If the intention was to confine the authority of each subdivision to one-ninth of the total tax-levying and bond-issuing capacity, language was used poorly adapted to indicate such purpose, and it cannot be assumed that words, which ordinarily have a different meaning, must be so construed as to bring about absurd results.

The first paragraph of section 1 contains provisions to the effect that municipal corporations, parishes, and school, drainage, road, or sewerage districts, are subdivisions of the state, and that such subdivisions may incur debt and issue bonds, and that the governing authorities of such subdivisions shall, each year, impose a tax sufficient to pay the interest and the principal falling due. This language is used with knowledge that, while some of the districts might be coterminous, they would, ordinarily, have different boundaries. Indeed, it is apparent that subdrainage and subroad districts would necessarily have different boundaries than drainage and road districts. A provision also of the article is that municipal councils may create within their limits more than one sewerage district. Where more than one sewerage district is created each district would have less territory than the municipal corporation. The bond-issuing and taxing power is not

made applicable to specific property, but the tax is imposed on the "assessed valuations of the property in such subdivision," and the bond issue is limited by "the assessed valuation of the property in such subdivision." A part of the property within a subdivision might be within one or more other subdivisions, while another part of this property going to make up the assessed valuation might be in that subdivision alone. It could not have been the purpose of the Constitution makers to authorize bond issues and taxation which, measured by one piece of property within the subdivision, would be unconstitutional, while measured by another would be legal. Inextricable confusion would exist, and the law would be rendered impractical of administration if such a construction should be given to its terms.

The proviso limiting taxation to ten mills is to the effect that the special taxes "for all purposes as above set forth shall not exceed," etc. The section begins with a defining of the subdivisions. The argument of appellant is that these are the purposes to which reference is made. If this be the case, the language was very inaptly chosen, for it cannot accurately be said that a municipal corporation or a parish or a road district is a purpose. If it be said that these different named subdivisions suggest the purposes, it could be answered that municipal corporations and the parish organizations discharge quite a number of governmental activities, some of which are not included in the specific designation of the purposes thereafter in section 1 named. A more probable construction of the language would be that the words "purposes as above set forth" have reference to the language authorizing the tax, which is for the purposes "of paying the interest and the principal falling due each year, and the amount which may be required for a sinking fund to retire the bonds."

The second paragraph of section 1 specifically names the purposes for which bonds may be issued. They include the purposes referable only to road or subroad districts, that is, constructing and improving and maintaining public roads and highways. They include the purposes referable to municipal corporations; that is, "paving and improving streets, roads and alleys, purchasing and constructing systems of waterworks, * * * lights, public parks and buildings, together with all necessary equipment and furnishing." It would seem that a proper construction of the article would be to limit the particular subdivision issuing the bonds to an issue equal to 10 per cent. of its assessed valuation, without reference to the number of purposes for which the particular subdivision could issue bonds. For instance, a municipal corporation, though charged with the duty of paving and improving streets, roads and alleys, and purchasing and constructing waterworks and public parks and buildings, would nevertheless be limited to 10 per cent. of the assessed valuation. This view is strengthened by the clause which gives municipal councils the authority to create sewerage districts within the limits of the municipality. Such a district, being created within the limit, would itself have a taxing power, and the bond-issuing capacity, which might otherwise be inadequate for necessary municipal purposes, would thus be substantially increased.

The section has this language:

"The total issue of bonds by any subdivision for all purposes shall never exceed 10 per centum of the assessed valuation of the property in such subdivision."

If it had been the intention to limit the total bond issues under this article to 10 per centum of the assessed valuation of the property, the language would have been, "the total issue of bonds by all subdivisions for all purposes," instead of "the total issue of bonds by any subdivision."

A construction other than that suggested would hardly be consistent with the other parts of section 1. "Paragraph 2" provides for drainage districts, and gives to these districts, "in addition to the powers hereinabove granted, the further power to provide drainage systems by levying acreage taxes." By section 4 of the article, the police juries are given authority to issue bonds based upon "the avails of the residue of the 10-mill tax authorized by this Constitution." The last paragraph of the article seems to give a construction to the language of the first paragraph. It provides that where bonds of any subdivision have been issued for any of the purposes specified in section 1, and the issuing has been authorized by the proper vote, etc., the bonds are validated, provided "that such bonds did not, at the time of their issue, exceed 10 per cent. of the assessed valuation of the property of such subdivision." And the article concludes with this language:

"This entire article is to be considered a full grant of power to the subdivisions of the state as set forth therein."

It cannot be assumed that the Constitution makers intended to say that it was a grant of power to the subdivisions of the state acting together, but that the article constituted a full grant of power to each of the subdivisions recognized or created.

*Taxing Power of Road Districts.*

Appellant's "second point" is:

"The special taxes levied by the said police juries and other governing authorities, in alleged pursuance of articles 292 and 232 of the Constitution of Louisiana, are null and void for the reason that same have never been authorized by property taxpayers."

Appellant's "point" involves the proposition that there is no authority conferred by article 232 to submit a proposition to the taxpayers of a road district, but that the authority is limited to the taxpayers of a parish, municipality, ward, or school district.

In another connection consideration has been given the case of Hayne v. Assessor, 143 La. 697, 79 South. 280, wherein the Supreme Court of Louisiana has held that no taxing power for road purposes exists by virtue of article 232, and a construction of its language will not be necessary. Article 291 (as determined by Hayne v. Assessor) provides that—

"Other taxes may be levied by the police juries for road and bridge purposes, not to exceed five mills for five years on the property of the parish, or

any ward thereof, where the rate of taxation and the purposes thereof shall have been submitted to the property taxpayers of said ward or parish," etc.

[18] The only case before us involving a tax other than for bonds under article 281, is that of road district No. 11, Tenth ward, Avoyelles parish. The proposition to tax in this case was submitted to the electors of the ward, in accordance with the terms of article 291. A tax of 6 mills was voted and levied, and this is in excess of the constitutional authority, as determined by the Supreme Court of Louisiana. No reason, however, is seen why the tax as levied should not be valid, except to the extent to which the constitutional limit was exceeded.

*Unauthorized Action by Police Jury.*

Attacks are made upon some of the proceedings resulting in bond issues and tax levies, on the ground that they were had by the police juries after the taking effect of an act transferring certain of the duties to boards of supervisors. The decision in Crow v. Board of Supervisors, 141 La. 1017, 76 South. 182, by which we are bound, renders a detailed consideration of the contentions based upon these irregularities unnecessary.

*Validating Act.*

Appellant's "sixth point" is that—

"The attempt of the Legislature, by Act No. 18 of the special session of 1917, to ratify all prior proceedings had or taken by police juries and boards of supervisors of road districts with reference to special taxes and bond issues, because it violates articles 47, 48, and other provisions of the state Constitution."

[19] Act No. 183 of 1914 provided, with prior legislation, the machinery by which articles 291 and 292 (292) were to be made effective. Act 199 of 1916 provided for boards of supervisors to perform some of the duties theretofore within the authority of police juries. After the latter act became effective, but before the boards of supervisors were organized, the police juries performed duties assigned them by Act 183 of 1914.

[20] It is, of course, impossible for the Legislature, by a validating act, to accomplish that which it could not, on account of the limitation of the Constitution, have done primarily. But, within the terms of the Constitution, the Legislature had control of the manner in which the constitutional authority to levy taxes and issue bonds should be exercised. Changes in the act primarily passed resulted in confusion, and doubts arose as to whether there had been strict compliance with the procedure prescribed by the Legislature. As to the matters within control of the Legislature, no reason is seen why the validating act should not be given effect. If the act undertakes to go beyond this, it is, to that extent, ineffective.

[21] The Legislature may determine the body by whom the election is to be called, how notice shall be given, the form of the ballot, the manner of voting, and by whom the result is to be declared. Informalities and irregularities as to any of these matters might be cured by a validating act. The essential purpose of the Constitution is to secure a fair expression of the will of the taxpayers entitled to vote,

and it is not suggested that, in any of the cases before us, the election failed in this fundamental respect.

Limited and applied to matters primarily within the control of the Legislature, the validating legislation does not appear to be in conflict with article 47, article 48, or any other provision of the state Constitution, or any provision of the Constitution of the United States.

### Parish of Avoyelles.

*Road District No. 11, Tenth Ward.*

The judgment sustaining the validity of the 6-mill tax levied in accordance with an election, the result of which was promulgated September 8, 1915, is modified to hold that the tax, to the extent of 5 mills, is valid, and as to the additional mill invalid, and as to such 1 mill injunction will issue as prayed by appellant. This action is based upon Hayne v. Assessor, 143 La. 697, 79 South. 280, decided subsequent to the action of the District Judge. The judgment as to the bond issue and tax levy therefor is affirmed.

*Road Districts Nos. 12 and 14.*

The judgment holding taxes in these districts invalid is not appealed from.

*Road District No. 13.*

The judgment of the District Court is affirmed.

*Avoyelles Road District No. 16, Created November 8, 1916.*

The judgment of the District Court is affirmed.

*Road District No. 16 of Avoyelles, Created February 7, 1917.*

No appeal is taken from a judgment declaring the tax invalid.

*Avoyelles Road District No. 17.*

The judgment of the District Court is affirmed.

### Rapides Parish.

The proceedings in each road district was sustained by the District Court, and the judgment as to each district is affirmed.

### Natchitoches Parish.

*Road Districts Nos. 1, 2, 3, 4, 12.*

Appeals have not been taken from judgments declaring the tax levies in these districts invalid.

*Road District No. 13.*

Judgment of the District Court holding the tax valid is affirmed upon grounds heretofore in this opinion indicated.

*Road District No. 19.*

Judgment of the District Court holding the proceedings valid is affirmed.

### St. Landry Parish.

*Road District No. 2, Fourth Ward.*

The judgment of the trial court is affirmed.

*Road District No. 3, Fourth Ward.*
The judgment of the trial court is affirmed.

*Road District No. 1, Sixth Ward.*
The judgment of the trial court is affirmed.

---

⬚⟻For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.