### BUSH v. TEXAS & P. RY. CO.

### RECEIVERS OF TEXAS & PAC. RY. CO. v. LOUISIANA PUBLIC SERVICE COMMISSION.

(District Court, W. D. Louisiana. November 25, 1922.)

No. 1120.

I. **Courts** ⊙⟹522—**Jurisdiction of court to entertain suit by receiver to restrain enforcement of confiscatory rates not affected by pendency of similar proceedings in other courts.**

Where receivers of a railway company bring suit to enjoin a Public Service Commission from enforcing unreasonable, unjust, and insufficient rates in the court in which the receiver was appointed, alleging violation of both the federal and state Constitutions, a plea of lis pendens, based on the fact that there is pending in another court of coordinate jurisdiction a suit by various railroad companies, including complainant, involving the same issues, does not preclude the court from taking jurisdiction of the instant case; the duty to protect the property in its possession in the receivership proceedings being sufficient warrant for a proceeding to restrain an improper taking of such prop-

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

erty, without awaiting the determination of issues of fact in another court.

**2. Carriers ⊂⊃18(6)—Delay in seeking relief against unjust rates not laches, if rates constitute taking of property without due process.**

A suit by the receiver of a railroad to restrain the enforcement of rates established by the Louisiana Public Service Commission *held* not barred by laches, based on the state statute of limitations, providing that such suit shall be brought within three months after the order complained of is issued and becomes effective, since the orders, if in fact violative of the federal constitution as a taking of property without due process of law, constitute a continuous taking, and plaintiff's remedy would not be lost by delay in seeking relief.

**3. Estoppel ⊂⊃81—Adoption by Public Service Commission of rate recommended by railroads not estopping railroad to object to such rates thereafter.**

In a suit by the receiver of a railroad company to enjoin the enforcement of rates established by the Louisiana Public Service Commission as a taking of complainant's property, without due process of law, a plea that the orders complained of were made by the commission on the recommendation of the railroad companies, including plaintiff, is not good; such orders being not irrevocably binding on either the commission or the railroad company.

**4. Carriers ⊂⊃18(6)—Rates established at request of railroad company presumed reasonable in action by company to restrain enforcement.**

In a suit by the receiver of a railroad to restrain the enforcement of rates established by the Louisiana Public Service Commission, the fact that the orders complained of were adopted at the special request of plaintiff and other railroad companies places on plaintiff the burden of showing that the rates established by the commission are unreasonable, and until the contrary is shown such rates will be presumed reasonable.

**5. Carriers ⊂⊃13(3)—Right of Public Service Commission to establish special rate for hauling road-building material upheld.**

Where, at the request and recommendation of railroad companies, the Louisiana Public Service Commission established rates for the transportation of road-building material to be used on state and parish public roads, substantially less than the ordinary rates for the transportation of such material, providing, however, that the state and parish received the benefit of such decreased rates, *held*, that a railroad company or its receiver cannot complain that a later order of the Public Service Commission, making applicable such decreased rate to such material used for paving municipal streets, was illegal or discriminatory, or arbitrary; the state having the right to fix rates for the transportation of materials for the building of public works lower than standard tariff rates for such material.

**6. Carriers ⊂⊃18(6)—Excessive or exorbitant penalties provided for violation of executive orders not ground for injunction.**

That a violation of a rate-fixing order of the Louisiana Public Service Commission may involve an excessive or exorbitant penalty affords no ground for injunction to restrain the enforcement of such order, since the penalties are separable from the order of the commission, and the court is not required to pass judgment on the penalty provisions in advance of an attempt to enforce them.

**7. Public service commissions ⊂⊃22—Orders not enjoined, unless conclusively shown to be violative of Constitution.**

A preliminary injunction to enjoin the enforcement of a rate-fixing order of the Louisiana Public Service Commission may properly be denied, where there is no conclusive proof offered to show that the rates provided are unreasonable, or violative of either state or federal Constitution.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. · Suit by the receivers of the Texas & Pacific Railway Company (appointed in the suit of B. F. Bush, receiver, etc., of the St. Louis, Iron Mountain. & Southern Railway against the Texas & Pacific Railway Company) for a preliminary injunction against the Louisiana Public Service Commission and the annulment of certain transportation rates. Application denied.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, La., for plaintiffs receivers.

W.. M. Barrow, of Baton Rouge, La., for defendants.

Before BRYAN, Circuit Judge, and JACK and HOLMES, District Judges.

JACK, District Judge. The receivers of the Texas & Pacific Railway Company, appointed by this court, bring this suit against the Louisiana Public Service Commission for the annulment· of certain intrastate rates for the transportation of sand, gravel, crushed stone, and shells to be used in the construction of public roads and streets, on the ground that such rates are in violation of both the state and federal Constitution. It is alleged that in March, 1916, by order 1980, the Railroad Commission of Louisiana, predecessor of the defendant Public Service Commission of Louisiana, established rates for the transportation of sand, gravel, crushed stone, and shells, and at the same time, by order No. 1981, fixed substantially less rates for the transportation of such commodities under identical circumstances, where same were to be used in the construction of state and parish public roads, and the parish and state obtain the benefit of such rates; that during the period the railroads were under federal administration, December 31, 1917, to February 28, 1920, such rates remained ineffective, but that· on May 12, 1920, the Railroad Commission, without notice, ordered the putting into effect of the rates established in 1916 by order 1981; that on June 15, 1922, after hearing to which plaintiffs entered their protest, the Louisiana Public Service Commission, which had succeeded to the authority and duties of the Railroad Commission and had adopted the orders previously issued by .the latter, issued a new order (No. 47) making the rates provided in order No. 1981 likewise applicable when the gravel,·etc., was to be used in the construction of streets and the freight thereon paid by federal, state, parish, or municipal governments; that such rates for·the transportation of sand and gravel for use in construction of public roads and streets is substantially lower than the rates for the transportation of the same commodities for general or commercial use, which latter rates are in no wise excessive or unduly high; that such rates are violative of the state Constitution, in that they are unreasonable and unjust (the Commission having authority, under the state Constitution, only to make reasonable and just rates), and are further violative of the state Constitution, in that they constitute a special tax or enforced contribution; that the rates are in violation of article 4 of the federal Constitution and the Fourteenth Amendment, inasmuch as they are wholly unjust, unreasonable, uncompensatory, and insufficient as remuneration for the services performed, and are concessions to special interests without reasonable ground and compensation therefor, and consequently con-

stitute a taking of the railway company's property without due process of law; that the state Constitution makes a violation of the rates established by the Public Service Commission punishable by an excessive and exorbitant fine, $100 to $5,000 for each offense, which, if enforced, would deprive the railroad company of its property without law and divest it of vested rights, contrary to the Fourteenth Amendment.

[1] *Lis Pendens.* The plea of lis pendens interposed by defendant is based on the fact that there is now pending in the District Court for the Eastern District of Louisiana a suit by various railroad corporations of the state, including receivers of the Texas & Pacific Railway Company, to enjoin the enforcement of orders 1980 and 1981. This suit, however, does not embrace all of the issues in the case at bar. It is not sought in the suit pending in the Eastern district of Louisiana to have an injunction issue against the enforcement of order 47, relative to sand and gravel for streets of municipalities. Consequently, the latter issue might be litigated here, even if the doctrine of lis pendens were applicable, where the two suits are pending in different federal courts, which question, it seems, has never been determined. Ryan v. Seaboard & Railroad Co. (C. C.) 89 Fed. 407. The rule is one resulting from comity between courts, and is not absolute. Nothing would be gained by litigating in the respective courts the two questions of fact, which involve, in reality, the same issue of law. Furthermore, the jurisdiction of this court results from the fact that the order of the Public Service Commission involves the alleged taking of property, at the time in the possession of the court and being operated by receivers appointed by it, without due process of law. Landon v. Public Utilities Commission (D. C.) 234 Fed. 152, affirmed 249 U. S. 236, 39 Sup. Ct. 268, 63 L. Ed. 577. The duty resting on this court to protect the property in its possession is sufficient warrant for this proceeding, without awaiting the determination of a part of the issues herein involved, in a suit pending in another jurisdiction.

[2] *Laches.* The plea is based on the state statute of limitations, providing such suits shall be brought within three months after the order is issued and becomes effective. The suit, however, was brought within three months of the time that the last order, No. 47, was issued and became effective. As to the other two orders, if they were, in fact, violative of the federal Constitution, as alleged, constituting a continuous taking of plaintiffs' property without due process of law, plaintiffs' remedy would not be barred by their delay in seeking relief. Wight v. Police Jury, 264 Fed. 705.

[3] *Estoppel.* The plea of estoppel is based on the fact that orders 1980 and 1981 were entered on the recommendation of the railroad companies, including plaintiffs. Such orders, however, were not irrevocably binding on either the commission or the railroads, and we do not think that the plea of estoppel is good, though such action of the railroads does have a direct bearing on the merits of the case.

*The Merits.* Plaintiffs' contention, setting up the real issue in the case, is thus succinctly stated:

"We wish, at the outset, to make it clear that we do not contend that the mere fact that there is a discrimination in rates in favor of certain

classes of shippers necessarily renders such rates invalid under the Fourteenth Amendment. Nor do we contend that the Fourteenth Amendment prohibits a state commission under any and all circumstances from fixing a rate less than the general maximum rate as applicable to a special class of service by a carrier. Our contention is that a general rate fixed by a state commission for a particular commodity is prima facie reasonable; that any lower special rate on shipments of that same commodity, made by or to the state or its subdivisions, is presumed to be unreasonable, and to afford less than just compensation to the carrier, and hence to deprive the carrier of its property without due process of law by devoting its property to public purposes without just compensation; that the burden is therefore upon the state commission to justify a special rate lower than the general maximum rate by proof that there are special conditions as to the cost of the service which warrant a lower rate; and that, in the absence of such a showing, the special rate will be set aside."

It will be noted from the above quotation that counsel does not claim that the mere fact of a discrimination in favor of the public as against the individual shipper is a violation of the Fourteenth Amendment, but he urges that such discrimination must be founded on reason and must not be arbitrary, and that where there is an established rate, and a special rate is thereafter made in favor of a certain class of shippers, the burden of proof as to the reasonableness of such special rate is on the commission.

Plaintiffs' argument overlooks the fact that there is not here presented the case of a special rate established for sand and gravel for road building, when there was at the time existing a general rate fixed for such commodities. It is shown that it was then the common practice to make a difference in rates between the two classes of gravel, and that at a hearing of the commission, the railroads themselves, including plaintiffs, at the same time submitted two separate rates, one for commercial sand and gravel, and the other for sand and gravel for road-building purposes. These rates having been presented at the same time by the railroad companies and adopted at their request, it is just as fair to presume that the one was too high, as that the other was too low, and we fail to see why the burden should be on the commission of establishing the reasonableness of the latter rate, rather than on the railroads to establish its unreasonableness.

Counsel for plaintiffs relies largely on the case of Lake Shore & M. S. R. Co. v. Smith, 173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858, in which it was held that a statute of Michigan requiring the sale of 1,000-mile tickets at a less rate than the regular rate charged was a taking of property without due process of law, and therefore unconstitutional. This case, however, was expressly overruled in Pennsylvania Railroad Co. v. Towers, 245 U. S. 6, 38 Sup. Ct. 2, 62 L. Ed. 117, L. R. A. 1918C, 475, in which the Supreme Court affirmed a decree of the Court of Appeals for the state of Maryland, 126 Md. 59, 94 Atl. 330, Ann. Cas. 1917B, 1144 refusing an injunction pendente lite, enjoining the Public Service Commission of Maryland from enforcing an order to sell commutation tickets at reduced rates. The court said:

"True it is that it may not be possible to reconcile these views with all that is said in the opinion delivered by the majority of the court in the case of Lake Shore & M. S. R. Co. v. Smith, supra. The views therein expressed, which are inconsistent with the right of the states to fix rea-

sonable commutation fares when the carrier has itself established fares for such service, must be regarded as overruled by the decision in this case."

The Supreme Court quoted with approval from the Maryland Court of Appeals, which based its decision largely on the fact that the rates put in force by the commission had previously been put in effect by the railroad company itself:

"The Lake Shore Case did not involve, as does the present one, the power of a state commission to fix intrastate rates for commutation tickets, where such rates had already been put in force by the railroad company of its own volition, and we confine ourselves to the precise question presented in this case, which involves the supervision of commutation rates when rates of that character have been voluntarily established by the carrier. The rates here involved are wholly intrastate. The power of the states to fix reasonable intrastate rates is too well settled at this time to need further discussion or a citation of authority to support it."

[4] The case at bar is even stronger than the Towers Case, for here the rates were not merely previously established, but were established at the special request of the various railroad companies, including the plaintiffs. While such action on the part of plaintiffs may not estop them from denying the reasonableness of such rates, it certainly shifts to the plaintiffs the burden of establishing such fact. The court cannot reach such a conclusion from the mere fact that there was, at the same time, established a higher rate for sand and gravel for general purposes. Even where a rate is established after hearing, over the opposition of the railroad, there is a presumption that it is a reasonable one. Railroad Commission of Louisiana v. Cumberland Tel. & Tel. Co., 212 U. S. 414, 29 Sup. Ct. 357, 53 L. Ed. 577.

Plaintiffs did not recommend or agree to the establishment of the rates for sand and gravel for paving streets provided in order No. 47, but no good reason has been shown for making any distinction between the rate for such materials for roads and the rate for streets. Order No. 47 would then appear but a proper and logical extension of the previous order, No. 1981.

[5] The authority of a state commission to make special freight rates for special purposes is fully reviewed in Louisville & Nashville Railroad Co. v. Garrett, 231 U. S. 298, 34 Sup. Ct. 48, 58 L. Ed. 229, and there sustained. See, also, Northern Pacific v. North Dakota, 236 U. S. 585, 35 Sup. Ct. 429, 59 L. Ed. 735, L. R. A. 1917F, 1148, Ann. Cas. 1916A, 1, Interstate Commerce Commission v. Baltimore & Ohio, 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699, and Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034. In the latter case there was a cheaper rate established by statute for furnishing gas to the city than that which was charged to individuals. The court said:

"Lastly, it is objected that there is an illegal discrimination as between the city and the consumers individually. We see no discrimination which is illegal or for which good reasons could not be given. But neither the city nor the consumers are finding any fault with it, and the only interest of the complainant in the question is to find out whether, by the reduced price to the city, the complainant is upon the whole unable to realize a return sufficient to comply with what it has a right to demand. What we have already said applies to the facts now in question."

It is urged that the discrimination between the two rates is unreasonable and arbitrary, because it is based, not solely on the character of the commodity or its intended use, but is further dependent on whether the state and parish, under order 1981, or the municipality, under order 47, "obtains the benefit of such rate." It is evident that the public would thereafter obtain the benefit either directly, where the freight was paid by the state, parish, or municipality, or indirectly, by lower prices from the private contractor, where he himself furnished sand and gravel for the work. The purpose, then, it would seem, of this proviso making the lower rate effective only when the public obtains the benefit thereof, was to make it inapplicable to shipments of sand and gravel to be used in paving under contracts previously made, where the contractor was to furnish the material. Of course, it was understood that the state, parish, or municipality would draft all future contracts so as to obtain the benefit of the rate. Consequently, as a practical proposition, it was safe to assume that, after the adoption of such orders, there would be no such shipments in which the public did not obtain the benefit of the reduced rate, and hence the only effective condition in the discrimination on the rate was based on the use to which the sand and gravel was to be put.

Gravel for purposes other than road building is usually washed before shipment, whereas road-building gravel is pit run. Unless the latter is given a lower rate, its use may be prohibitive in many cases. It is not shown that such gravel is being hauled at an actual loss. The profit made by plaintiffs, though it may be little, would be entirely lost to them if a prohibitive rate were established. The necessity, then, for the lower rate must be presumed from the fact that the railroad companies recommended it, and for the same reason it must be inferred that the discrimination made is not an unreasonable one. In the very recent case, State of Tennessee et al. v. United States (D. C.) 284 Fed. 371, Middle District of Tennessee, before Circuit Judge Denison and District Judges Sanford and Ross, the right of the state to fix rates for the transportation of materials for use in building public works, lower than the standard tariff rates, was upheld and an interlocutory injunction denied.

[6] The fact that the penalty for violation of the orders of the commission may be excessive or exorbitant affords no ground for the injunction. Such penalties are separable from the order of the commission, and it is not necessary for the court to pass judgment on the penalty provisions in advance of any attempt to enforce them. Phœnix Railroad Co. v. Geary, 239 U. S. 277, 36 Sup. Ct. 45, 60 L. Ed. 287.

[7] The rate attacked is not violative of either the federal or state Constitution. It will be presumed a reasonable rate, where there is no conclusive proof offered to the contrary.

The application for preliminary injunction will accordingly be refused.