SOUTHWEST STONE CO. v. RAILROAD COMMISSION et al.

No. 9456.

Court of Civil Appeals of Texas. Austin.

Dec. 13, 1944.

Rehearing Granted in Part and Denied in Part Jan. 10, 1945.

Frank A. Leffingwell, Ralph W. Currie, and Leffingwell, Currie & Davis, all of Dallas, for appellant.

Grover Sellers, Atty. Gen., and David Heath, Asst. Atty. Gen., for appellee Railroad Commission.

Andrews, Kelly, Kurth & Campbell and Harry R. Jones, all of Houston, for appellee Guy A. Thompson, trustee International & G. N. Ry. Co.

Callaway & Reed, O. D. Montgomery, and Rollo E. Kidwell, all of Dallas, for appellee Gifford-Hill & Co.

BAUGH, Justice.

We copy from appellant's brief its statement of the nature and result of this suit:

"This suit was brought under Article 6453 to enjoin a rate order of the Railroad Commission of Texas, hereinafter called 'Commission', because said order prescribed rates which were unjust and

unreasonable to the appellant, plaintiff in the court below. The order complained of prescribed substantial reductions in railroad freight rates on cut back asphaltic concrete aggregates, carloads, from Carley, Texas, to numerous destinations in the State of Texas but made no reductions in rates on the same commodity which appellant ships from Lone Star Spur, Texas.

"Guy A. Thompson, trustee of International-Great Northern Railroad Company, debtor, and Gifford-Hill & Co., Inc., intervened on behalf of the Commission.

"The cause was on the jury docket but, over the objection of appellant, it was withdrawn from the jury docket, and heard by the court. At the close of the trial which consumed three days, the court rendered judgment for defendants, holding there was no issue of fact to submit to a jury and that upon the facts shown it was the duty of the court to instruct a verdict against plaintiff."

Appellant presents five points of error as follows: Error of the trial court

1. In refusing to submit fact issues to the jury.

2. In admitting in evidence the findings and opinion of the Commission on which the rate order was based.

3. In admitting in evidence rate orders of the Commission on other commodities and from other origins.

4. In refusing to enjoin the order attacked because it had no substantial basis in fact.

5. In rendering judgment against appellant, because the order attacked was founded upon a factual misapprehension.

The order in question was entered at the request of the I-G N R R Co., (Missouri Pacific), after a full hearing of the protest of appellant against it. The appellant owns and operates a plant for manufacturing cut back asphaltic concrete, or asphalt coated crushed stone, located at Lone Star Spur, in Wise County, Texas, approximately 46 miles northwest of Fort Worth. It is located on the Rock Island Railroad. The nearest junction point with any other railroad line is with the Ft. Worth & Denver, 20 miles north of Lone Star Spur. The nearest junction point with the Southern Pacific Railroad is at Ft. Worth, 48 miles from Lone Star Spur.

Gifford-Hill & Co. has for many years owned and operated a sand and gravel pit near Hearne in Robertson County; and since 1942, a plant for manufacturing asphalt covered materials. The materials sold and shipped by all of these plants are used in paving roads, streets, and airplane runways, wherein appellant and Gifford-Hill & Co. compete with each other in the market. The plant of Gifford-Hill & Co. covers several hundred acres and is crossed by both the T & N O R R (Southern Pacific) and the I-G N R R (Missouri Pacific) which have a common junction point at Hearne. The loading point for Gifford-Hill & Co. on the I-G N is but a spur track and has a station designation of Carley. Carley is located 1.3 miles from the city limits of Hearne and 2.4 miles from the freight depot of the M P in Hearne. The loading point on the S P (T & N O), also located on Gifford-Hill & Co's. property is on a spur track of that railroad designated as Glass. Glass is located 3.9 miles from the S P freight depot in Hearne. Between Carley and Glass, approximately one-half mile apart, the two railroads at their nearest point are only about 250 feet apart. When Gifford-Hill & Co. shipped material over the I-G N it was loaded at Carley. When shipped over the T & N O it was loaded at Glass. The rates fixed by the Commission on sand and gravel shipped either from Carley or from Glass to the same destination, other than Hearne, was, and for more than ten years had been, the rate from Hearne to such destination. That is, these two spur loading points—Carley and Glass—were treated as Hearne common loading points. Those rates as to sand and gravel shipped from Carley and Glass on a Hearne rate had never been attacked by appellant as discriminating against it. This commodity rate, however, did not include asphalt covered material. When Gifford-Hall & Co. in 1942 installed its plant for manufacturing asphalt coated materials, its plant was so located as to make it cheaper and more convenient to load such materials at Carley and ship the greater portion thereof over the Missouri Pacific lines to points thereon under a single line rate. Some of the destinations on the M P lines were served also by the S P lines. Unless the asphalt covered materials were put on the same rate as sand and gravel (the common point Hearne rate) shipments of asphalt covered materials originating at Carley Spur on the M P lines, and going to destinations served by the S P lines (not served by the M P lines) would bear a

joint line rate, thus adding a joint line differential of from 5¢ to 15¢ per ton, dependent upon distance from the point of origin. Thus shipments from Gifford-Hill & Co's. plant to destinations served by the S P lines (not served by the M P lines) were placed at a disadvantage and by far the greater portion of the asphalt covered material was moving over the M P lines. By originating on the S P shipments destined to points on the S P the shipper could escape the penalty of joint line differentials, which he had to pay when shipments to points on the S P originated at Carley on the M P. The shipper had, as hereinafter shown, several means by which he was threatening to do this. This would have deprived the M P of revenue which it was securing by virtue of being the railroad of origin. It was to retain this traffic that the M P instituted this action before the Railroad Commission. The S P did not protest the application.

Considering now the points of error urged, appellant's first point is overruled. What constitutes an unjust or unreasonable discrimination as between shippers is ordinarily a question of fact. Galveston Chamber of Commerce v. R. R. Comm., Tex.Civ.App., 137 S.W. 737; Ft. W. & D. C. Ry. Co. v. Frazier, Tex.Civ. App., 191 S.W. 808. This is particularly true if there be a conflict in the evidence as to the facts asserted as constituting the discrimination. Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681. But where, as here, the material and controlling facts are not disputed, and lead to but one reasonable conclusion, then whether such facts constitute unjust and unreasonable discrimination becomes a question of law for the court, and no jury issue is presented. Railroad Comm. v. Houston & T. C. Ry. Co., 16 Tex.Civ.App. 129, 40 S.W. 526, 1052; Ft. W. & D. C. Ry. Co. v. Frazier, supra.

Preliminary to its order, and as a basis for it, the Commission made extensive findings of facts, including its opinion and conclusions thereon, and recited its reasons for issuing the rate order. The appellant introduced in evidence only the rate order. Thereupon the appellees, over the objections of appellant, introduced the findings and conclusions of the Commission on which the order was predicated. Point two of appellant asserts that its admission was reversible error.

It is now settled both by the statute (Art. 6453, R.C.S.) and the decisions that suits to test the validity of such orders are trials de novo, to be tried as "other civil causes." Consequently the admissibility of evidence in such trials, generally, is governed by the rules of evidence applicable to other civil causes. It may be conceded that the fact findings of the Commission, and recitals in its opinion as to the evidence heard by the Commission, do not constitute competent proof upon a trial de novo of such facts. Nor are the conclusions of the Commission as to what the proof before it showed, in themselves, competent proof of facts put in issue upon such trial. The facts necessary to sustain or strike down the rate order must be adduced upon the trial by competent evidence there presented, regardless of what the Commission heard. Railroad Comm. v. S. A. Compress Co., Tex.Civ. App., 264 S.W. 214, 217; Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681; Railroad Comm. v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022. This does not mean, however, that such findings, conclusions and opinion of the Commission are not admissible for any purpose. They do disclose the basis on which the Commission acted. Such official findings and opinion are not in the same category as a mere transcript of the evidence heard by the Commission, presented in Railroad Comm. v. Rau, Tex.Civ.App., 45 S.W.2d 413, and in hearings in Rule 37 cases. Under the Motor Carrier Act (Art. 911b, V.A.C.S.), the Commission is required to file a written opinion with its order. In the instant case, even though parts of the Commission's opinion are clearly not admissible as proof of facts in issue upon the trial, we have found the opinion very helpful in clearly stating the effects of the rate order, the reasons for its issuance, and the grounds on which it was based. It is not amiss to observe, also, that in a similar case this court has taken into consideration the expressed findings and reasons of the Commission for the issuance of such rate orders. See Houston Chamber of Commerce v. R. R. Comm., Tex.Civ.App., 19 S.W.2d 583, affirmed by Supreme Court in 124 Tex. 375, 78 S.W.2d 591. Some portions of the opinion were admissible and some were not. The objection was made to it as a whole. Appellant did not request the trial court to make findings of fact on which its judgment was based.

There is nothing to show that the trial court's judgment was based in any manner on the R. R. Commission's opinion. There was ample other evidence to sustain the court's judgment. Under such circumstances, even if inadmissible, the trial being to the court, the error does not require a reversal. Ferguson v. Ferguson, Tex.Com. App., 23 S.W.2d 673; Fowler v. Maytag Southwestern Co., Tex.Civ.App., 82 S.W. 2d 699; Greenville Nat. Ex. Bank v. Nussbaum, Tex.Civ.App., 154 S.W.2d 672.

■ In any event, if it were error to admit such opinion, we think the error was harmless, because substantially all of the material and controlling facts and reasons stated in the opinion were clearly established by other competent evidence most of which was uncontroverted.

■■ Appellant's next point complains of the admission in evidence of numerous rate adjustment orders of the Commission, applying to various points in Texas wherein shippers whose plants are located near railroad junction points have been given, by such adjustments, the benefit of junction point rates. Such adjustment rates relate to such commodities as cement, sand and gravel, and some to asphalt coated materials. Appellant contends that such adjustments relate to other commodities than those involved in the instant case; to different fact situations; that those involving asphalt coated materials are not similar to the facts here involved; that such adjustments are themselves unlawful; and consequently none were admissible on the only issue in this case—that is, whether the specific facts in the instant case render the particular rate here attacked unjust, unreasonable and discriminatory as to appellant. Generally speaking, such is the nature and extent of the inquiry when a particular rate is involved. Obviously, in such adjustment rate orders, identical fact situations would not prevail in any two situations. However the same general overall principle or policy should apply in order to avoid discrimination. Nor is it essential that identical commodities be involved. We see no material difference, so far as applicable freight rates are concerned, between asphalt coated crushed stone, sand and gravel, and the same materials uncoated. No valid reason appears why both should not bear the same rate. Nor is any different principle in rate making involved merely because in one instance a plant and loading point is located on one railroad 2 miles from its junction point with another railroad; and in another where such plant or loading point is located on or between two railroads 3 or 4 miles from a common junction. The statute enjoins upon the Commission the duty to prevent unjust discrimination. R.C.S. Art. 6448. This necessarily implies and requires substantially equal or similar treatment of all shippers of the same or similar commodities similarly situated. Its orders undertaking to do so, unless and until "finally found otherwise in a direct action brought for that purpose" are, under the statute, "held conclusive, and deemed and accepted to be reasonable, fair, and just." Art. 6452, R.S.1925. And as against a charge of unjust discrimination in a particular order or rate, it was clearly permissible for the Commission to negative such charge by showing that the rate attacked was in accord with other rates, conclusively presumed to be valid, governing other shippers of the same or similar materials similarly situated. Otherwise failure to issue such a commodity rate placing a particular shipper or shipping point (in this case Gifford-Hill Co. at Carley) on a parity with other shippers of like materials under like conditions elsewhere, would, in itself, amount to a discrimination against it. The orders involved, therefore, showing the policy and practice of the Commission to issue like orders in similar cases under similar circumstances were, we think, admissible in evidence.

■ Appellants points 4 and 5 above stated will be discussed together. Under Art. 6454, R.S.1925, the burden rested upon appellant to show that the rate order in question was unreasonable and unjust to it. If the rate in question were granted on several grounds, any one of which would sustain it, it should be upheld, even though some of such grounds might not. One of the grounds recited by the Commission was that Gifford-Hill & Co. could, among other things, secure a single line rate from Carley by the construction of a relatively short switch track from the I-G N at that point to Glass on the S P. Appellant particularly complains of this on the ground that such a switch track would have to cross a paved cardinal highway between said points, a matter not known to nor taken into consideration by the Commission in issuing the order. That such a crossing would be dangerous, ex-

pensive and contingent upon securing permission of the Highway Commission to construct it. This basis of the order may, however, be wholly disregarded. The intervenor, Gifford-Hill & Co., would have been entitled to a single line rate either by the inclusion of Carley within the switching limits of Hearne; by hauling their coated materials destined to S P points to Glass on their own property for loading instead of loading it at Carley; or by classification, (as the Commission did here) for rate purposes, of asphalt coated sand and gravel in the same commodity class as uncoated sand and gravel, which latter commodity under existing rates, already enjoyed a single line rate from Carley, and would continue to enjoy such rate, even if the order here complained of be set aside.

Regardless of this, however, we think the appellant failed to show that said reduced rate unjustly discriminated against it under the uncontroverted proof. The gist of appellant's complaint is that by virtue of the reduced rate from Carley the competitive trade territory, as it existed under the old rate, on asphalt coated materials was enlarged for Gifford-Hill & Co., and diminished for appellant, particularly in the territory south and southeast of Fort Worth and Dallas. The four points set out in appellant's petition, and the rates applicable to shipments thereto, as showing discrimination are Corsicana, Dallas, Fort Worth and Waxahachie. The new rate order, here attacked, reduced the freight rate on coated materials 15 cents per ton from Carley to Corsicana, Dallas and Waxahachie and only 3 cents per ton to Fort Worth. Under the new rate order the rates in cents per ton on such coated materials to said destinations from Carley, on the one hand, and from Lone Star Spur, on the other, were:

| Destination | Carley Rate | Lone Star Spur Rate |
|---|---|---|
| Corsicana | 80 | 105 |
| Dallas | 105 | 75 |
| Fort Worth | 111 | 51 |
| Waxahachie | 95 | 90 |

■ It thus appears that as to Dallas, Fort Worth, and Waxahachie appellant enjoys a lower freight than does its competitor, Gifford-Hill & Co. at Carley. It is not, therefore, placed at a competitive disadvantage because of freight rates. At Corsicana, Gifford-Hill & Co. has a 25-cent per ton lower rate than does

appellant; but there is neither allegation nor proof either as to the respective lengths of haul nor costs of carriage and handling as between Corsicana and these respective shipping points. The record fails to show that such disparity is not reasonable, nor that it is not fully justified. Appellant nowhere contends that its plant is similarly situated to that of its competitor at Carley. On the contrary its plant on the Rock Island is 20 miles from the nearest junction point with another railroad, and 48 miles from a junction with the S P lines, one of the lines most immediately affected by the rate order here involved. In fixing just and reasonable rates it is the duty of the Commission to consider not only the interests of the shipper but the interests of the carriers, the maintenance of reasonable and fair competition between competing lines; and the interests of the public. The commodity affected by the order is one used primarily in the construction of streets and highways wherein the State is the principal purchaser. It is paid for out of public funds and applied to a public use. Any benefit arising from a reduction of transportation charges thereon, so long as they are reasonable and not confiscatory (The railroads are not complaining of the rate as being too low) presumably, therefore, inures to the benefit of the public. While there is nothing to show that the Commission took these matters into consideration it could appropriately have done so. The Federal Courts have held that a public service commission may fix rates, lower than standard rates, on materials shipped and used on public works and in building public roads without being discriminatory. Bush v. T. & P. Ry. Co., D.C., 290 F. 1008; State of Tennessee v. United States, D.C., 284 F. 371. However, all shippers of such materials should be given like treatment under like circumstances.

■ But, as above stated, appellant is not complaining of the rates fixed from Lone Star Spur. Nor is it similarly situated, for rate purposes, to Gifford-Hill & Co.'s plant at Carley, entitling it to the same consideration. It likewise failed to prove, as the law requires, that under all the facts and circumstances the rate attacked was unjustly discriminatory against it. The judgment of the trial court is therefore affirmed.

Affirmed.